**Clyde FLOWERS, Appellant,**

v.

**The TRAVELERS INSURANCE COM-
PANY, Appellee.**

**No. 16654.**

United States Court of Appeals
Fifth Circuit.

July 15, 1958.

Joe H. Tonahill, Jasper, Tex., for appellant.

Jerry D. Barker and Barker, Barker & Simpson, Galveston, Tex., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Now entering upon its fifth decade with a tenacity which refuses to acquiesce in occasional contemporary reports of its final rejection, Jensen[1] and

1. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086.

its limitless wake[2] is once again the heart of the old, old controversy: is workmen's compensation coverage under the State (Texas) or Federal (Longshoremen and Harbor Workers' Compensation) Act? The District Court held that the Texas Act could not apply. Here, as so often, the facts, strikingly simple, neither complex nor conflicting, are not the cause of bewilderment. On them, the picture is clear-cut. What distorts or obscures or befogs the vision is not fact, but law. Strong as is the temptation to undertake to chart a way to dispel it altogether, the task, essayed by others with generally unrewarding results, it too formidable. All we can hope to do, either by a minute and transitory dispersion of the cloud, or an indirect penetration of it by a reading on some juridical radarscope, is to see how this small case is to be decided.

Flowers was injured while performing duties as a welder in making repairs on the S. S. Redstone, a large ocean-going tanker. The vessel was in a floating drydock in Todd Shipyard in Galveston Harbor.

The setting was wholly maritime. The ship was the very instrument of ocean commerce. The vessel, if not actually floating *in* navigable waters, was there in law. For she was in a floating drydock which by all tests made the place of injury maritime. Avondale Marine Ways, Inc., v. Henderson, 5 Cir., 201 F.2d 437, 1953 AMC 432, affirmed 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77, 1953 AMC 1990. The work he was doing was maritime. For the repair of an existing vessel is one of the most ancient of maritime transactions giving rise even to that most cherished and characteristic badge—the formidable lien *in rem*. Benedict on Admiralty, 6th Ed., Vol. 1, pp. 17–32; The General Smith, 4 Wheat. 438, 17 U.S. 438, 4 L.Ed. 609; The Lottawanna, 21 Wall. 558, 88 U.S. 558, 22 L.Ed. 654. His presence on board the ship, actively working as a welder, essential to the making of essential repairs, was nonetheless maritime even though 80% of his work was generally ashore in the plate department of the Shipyard. The non-maritime nature of the so-called regular work or duties is completely irrelevant. Northern Coal & Dock Co. v. Strand, 278 U.S. 142, 49 S.Ct. 88, 73 L.Ed. 232, 1929 AMC 64; Employers' Liability Assurance Corp. v. Cook, 281 U.S. 233, 50 S.Ct. 308, 74 L.Ed. 823, 1930 AMC 760; Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184, 1942 AMC 1; Pennsylvania R. Co. v. O'Rourke,[3] 344 U.S. 334,

2. A story too often told to warrant relating here, it is well set forth with considerable detail and with the benefit of being up to date in The Law of Admiralty, Gilmore and Black (1957), §§ 6-45 through 6-52, pp. 333 et seq. Related to it is also § 6-53 through 6-62. It has also been treated extensively in Law Reviews frequently under engaging titles. See, e. g., Rodes, Workmen's Compensation for Maritime Employees: Obscurity in the Twilight Zone, 68 Harvard L.Rev. 637 et seq.; One If By Land, Two If By Sea: A Comparative Study of Remedies Available to Injured Seamen and Land Workers, 30 Tex.Law Rev. 489 et seq.; many others are listed note 66, p. 127, Sprague and Healey, Cases on Admiralty (1950).

3. Rejecting the contention that O'Rourke's work was primarily that of railroading, the Court said about nonmaritime duties: "The result in Parker, as well, is totally inconsistent with any 'duties test'. Armistead, the employee there, was a janitor with the motorboat company. He had been ordered to ride in one of the boats during a test trip in order to keep a lookout for hidden objects. * * * Compensation under the Harbor Workers' Act could not have been paid in connection with his death if we were to test its applicability by the nature of his regular work. A number of lower court cases are in similar vein. Those we collect in the margin deal with various types of construction and service workers, obviously not themselves engaged in traditional 'maritime employment,' if one were to look solely to the particular type of job they were engaged for." 344 U.S. 334, 73 S.Ct. at page 306, 97 L.Ed. at page 374. Listed in the Court's footnote 7 was our decision DeBardeleben Coal Corp. v. Henderson, 5 Cir., 142 F.2d 481.

73 S.Ct. 302, 97 L.Ed. 367, 1953 AMC 237.

Nor was it, in the special context of this ceaseless, half-century running battle, that kind of a case in which "* * * employees * * * occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation" or as to which "* * * the line separating the scope of the two [State and Federal Compensation Acts] being undefined and undefinable with exact precision, marginal employment may, by reason of the particular facts, fall on either side" which led the Court in Davis v. Department of Labor of Washington, 317 U.S. 249, 253, 63 S.Ct. 225, 255, 87 L.Ed. 246, 248, 250, 1942 AMC 1653, to add to or detract from the post-Jensen gloss by its now celebrated figure of the twilight zone:[4]

"There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular

facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act." 317 U.S. at page 256, 63 S.Ct. at page 229, 87 L.Ed. at page 250.

This is so because, both before and since the time of Davis, the doing of repair work on an existing vessel has been treated[5] as so clearly maritime in nature that attempted application of State compensation laws would collide with that essential uniformity which was the very breath of Jensen.

There is thus no undefined or undefinable boundary. There is here no marginal employment. Davis v. Department of Labor, supra. If there is, in our simple case, a twilight, it must have come, if it did, from a solar or lunar-like eclipse, partial or complete, temporary or permanent, occasioned as the unilluminating per curiams in Moore's[6] and Baskin[7] cast either a shadow or obscured light.

4. The Davis case has sometimes been described as " 'the first come first served' rule," DeBardeleben Coal Corp. v. Henderson, 5 Cir., 142 F.2d 481, 483.

5. With no pretense toward scholarly affectation, we list many of these cases to indicate that as to the (a) actual making of (b) repairs to (c) an existing vessel (d) while afloat, from keel to truck in the judicial hierarchy there has never been any real doubt as to its maritime nature, and hence the exclusive application of the Federal Act to the exclusion of State statutes: John Baizley Iron Works v. Span, 281 U.S. 222, 50 S.Ct. 306, 74 L.Ed. 819, 1930 AMC 755; Robins Dry Dock & Repair Co. v. Dahl, 266 U.S. 449, 45 S.Ct. 157, 69 L.Ed. 372, 1925 AMC 182; Great Lakes Dredge & Dry Dock Co. v. Kierejewski, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756, 1923 AMC 441; Gonsalves v. Morse Dry Dock & Repair Co., 226 U.S. 171, 45 S.Ct. 39, 69 L.Ed. 228, 1924 AMC 1539; Messel v. Foundation Co., 274 U.S. 427, 47 S.Ct. 695, 71 L.Ed. 1135, 1927 AMC 1047; Ellis v. Gulf Oil Corp., D.C.N.J., 48 F.Supp. 771, 1943 AMC 874; Lake Washington Shipyards v. Brueggeman, D.C.Wash., 56 F.2d 655; Avondale Marine Ways, Inc. v. Henderson, 346 U.S.

366, 74 S.Ct. 100, 98 L.Ed. 77, 1953 AMC 1990; Id., 5 Cir., 201 F.2d 437, 1953 AMC 432; Newport News Shipbuilding & Dry Dock Co. v. O'Hearne, 4 Cir., 192 F.2d 968; Western Boat Building Co. v. O'Leary, 9 Cir., 198 F.2d 409, 1952 AMC 1639.

In contrast to this, work on an uncompleted hull before it has become a ship is not under Federal coverage and is, on the contrary, under State jurisdiction: Grant Smith-Porter Ship Company v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321; United States Casualty Company v. Taylor, 4 Cir., 64 F. 2d 521, 1933 AMC 1200; Frankel v. Bethlehem-Fairfield Shipyard, D.C.Md., 46 F.Supp. 242, 1942 AMC 1145, affirmed 4 Cir., 132 F.2d 634, 1943 AMC 65, certiorari denied 319 U.S. 746, 63 S.Ct. 1030, 87 L.Ed. 1702.

6. Moore's Case, 323 Mass. 162, 80 N.E.2d 478, 1948 AMC 1862, affirmed per curiam sub nom. Bethlehem Steel Co. v. Moore, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417.

7. Baskin v. Industrial Accident Commission, 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523, reversing, per curiam, 89 Cal.App.2d 632, 201 P.2d 549; on remand to the State Court, 97 Cal.App.2d 257, 217 P.2d 733, affirmed per curiam Kaiser Co., Inc.

We speak of them in this figure neither to disparage them nor to avoid their authoritative force if, and to whatever extent, they are applicable. But we, with others,[8] and perhaps the Court [9] itself, see in these actions either uncertainty, if not now, then assuredly in the making, and an accentuated instability in the everyday administration of compensation acts to amphibious employees if these are thought to throw down the bars in complete disregard of the philosophy expressed in Parker v. Motor Boat Sales, Inc., supra, and to this date not repudiated that Congress meant to draw the line where Jensen left it. DeBardeleben Coal Corp. v. Henderson, 5 Cir., 142 F.2d 481, 483.

We think that the Court by subsequent action has made it quite plain that it had no such revolutionary purposes in mind. Pennsylvania Railroad Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367, 1953 AMC 237, has, in our judgment, been given altogether too little attention. To us, it has substantial significance. Once again, while scholars and others were sounding the death knell of Jensen, the Court was the donor of another transfusion. "A quarter of a century of experience has not caused Congress to change the plan. The 'Jensen line of demarkation between state and federal jurisdiction' has been accepted. Davis v.

Department of Labor & Industries * * *." Id., 344 U.S. 334, 73 S.Ct. at page 304, 97 L.Ed. at page 372.

We are aware, of course, that that case dealt immediately with the contest between two Federal statutes, the Longshoremen's Act, 33 U.S.C.A. § 901 et seq., and the Jones Act, 46 U.S.C.A. § 688, adopting F.E.L.A., 45 U.S.C.A. § 51 et seq. But both in a negative and affirmative way, the Court inevitably dealt with the Jensen problems of a state act, vis-a-vis the Federal Act. After reviewing the Jensen history and the passage of the Longshoremen's and Jones Acts, the Court reaffirmed the constitutional implications. "This act and the Jones Act provided means for indemnification for injuries for all maritime employees who were beyond the constitutional reach of state legislation * * *." Id. Immediately thereafter it made the decisive statement that "New Jersey could not have enacted statutes granting compensation for respondent's injury on navigable water. Therefore respondent comes within the coverage of that portion of § 903(a) that includes those outside the reach of state compensation laws." Id., 73 S.Ct. at page 304.

O'Rourke was treated by the Court as was the employee in Nogueira v. New York, N. H. & H. R. Co., 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754, 1930 AMC 763.

---

v. Baskin, 340 U.S. 886, 71 S.Ct. 208, 95 L.Ed. 643.

8. See, Has the Jensen case Been Jettisoned?, 2 Stanford L.Rev. 542, 546. The article analyzes the uncertainties and points out that if these holdings are applied literally, the two acts, State and Federal, are no longer ever mutually exclusive, but that in every case the employee has the choice. Starting with the premise that of all types of activity, work as a longshoreman or a ship repairman is the most clear-cut case of employment of a maritime nature, the article concludes:

"But if the Massachusetts interpretation of the twilight zone theory is adopted, is there any logical stopping place short of giving every maritime worker his choice of remedy? Has the Jensen case been completely overruled, leaving state

courts as free to apply local law as they were before 1917?

"It is highly probable that the Supreme Court will be called upon to explain the meaning of the Moore's and Baskin cases in the near future. Until clarification is made, claimants, employers, lawyers, and the lower courts will be more in the dark than ever."

These and other perplexing uncertainties, including the Court's citation of these cases in Avondale Marine Ways, Inc. v. Henderson, note 9, infra, are discussed in Gilmore and Black, The Law of Admiralty, §§ 6–50, 51, pp. 350–354. See also, Rodes, 68 Harvard L.Rev. 637, supra, note 2.

9. See the concurring opinions Avondale Marine Ways, Inc. v. Henderson, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77, 1953 AMC 1990.

The Court held that each had been engaged in the actual work of loading or unloading cargo from a vessel. If for one doing such work a state could not validly provide for workmen's compensation, then surely it could not for one in Flowers' status whose work as a repairman on an existing vessel reeked equally of the sea.

■ It added the further and entirely new concept that where coverage of § 903(a) is applicable, the exclusive liability of § 905 does not depend on the nature or character of the work being done by the injured employee so long as (1) that injury occurs on navigable waters and (2) the employer is such a person "*any* of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any drydock.)," § 902(4). Flowers' rights under the Act for an injury admittedly received on navigable waters while engaged in the performance of his duties depended, not upon his own status (even though it was purely maritime in nature), but rather upon the fact that his employer, Todd Shipyards Corporation, had "*any* * *  employees" engaged in maritime employment. The undisputed facts, the stipulation, and the very nature of its business established conclusively that this condition was fully met. The result here, as there, is plainly indicated for "If * *  the accident occurs on navigable waters, the Act must apply if the injured longshoreman [ship repairer] was there in furtherance of his employer's business,

irrespective of whether he himself can be labeled 'maritime.' Such are the admitted facts of this case." Pennsylvania R. Co. v. O'Rourke, supra, 344 U.S. 334, 73 S.Ct. at page 306, 97 L.Ed. at page 374.

Several additional factors reinforce this general conclusion that the Court did not mean for Moore's and Baskin to capsize all that had existed before.

If, as some have thought,[10] the emphasis in Davis on presumptive validity was primarily a reflection of administrative finality by whichever agency, state or federal, first handles the case, then the action here of the District Court in rejecting state, and sustaining federal, coverage has an additional basis. From an administrative point, Texas has categorically rejected jurisdiction, power of control over this case. Texas did it first by the order of the Industrial Accident Board, Tex.Rev.Civ.Stat.Ann. Art. 8307, dismissing the claim because it was subject to the Federal Act. Texas did it next by the action of the Court below since, in the routine handling of the statutory appeal for a trial de novo, Tex.Rev. Civ.Stat.Ann. Art. 8307, § 5, removed to the Federal Court because of diversity of citizenship, the Federal Court was just another Court[11] of Texas. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. On the other hand, the case was extensively processed[12] by the Deputy Commissioner under the Federal Act. Avondale Marine Ways, Inc., v. Henderson, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77, 1953 AMC 432.

---

10. See Western Boat Building Co. v. O'Leary, 9 Cir., 198 F.2d 409, 415, 1952 AMC 1639. This seems to be the theory of Judge Drewen in Dunleavy v. Tietjen & Lang Dry Docks, 17 N.J.Super. 76, 85 A.2d 343, affirmed App.Div.1952, 20 N.J. Super. 486, 90 A.2d 84, certiorari denied 10 N.J. 343, 91 A.2d 448; and see comments footnote 328, p. 355, Gilmore and Black, The Law of Admiralty and Rodes, Workmen's Compensation for Maritime Employees: Obscurity in the Twilight Zone, 68 Harvard L.Rev. 637, 650.

11. Of course the law to be applied is wholly Federal in nature so that, on this, the District Judge, unlike an Erie [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188] situation, was bound to follow Federal, not State, decisions.

12. The employer presumably made the mandatory statutory report of the injury, 33 U.S.C.A. § 930(a), covering the injury of August 19, 1955. Temporary total disability payments of $35.00 per week were paid for 20 weeks from August 20, 1955 to January 6, 1956, for the total amount of $700.

A consideration of administrative application of these competing remedies has further significance. The desirability of a readily workable scheme with maximum administrative certainty leads inevitably, if two or more interpretations of these cases are open, to the selection of that one which will most nearly achieve this unattainable ideal.[13] If, as some suggest, literal application of Moore's and Baskin means that all is either twilight or may be made so by the injured employee, the carefully devised machinery for the orderly, routine processing of compensation benefits under the Longshoremen's Act will either be wrecked by continual tinkering of State agencies or will fall into a state of disrepair from neglect and nonuse.

Unlike some State compensation acts, the Longshoremen's Act is almost self-executing.[14] Compensation benefits are payable and paid, medical care and attention furnished, generally without even the necessity of filing a formal claim, as such, almost universally without a formal hearing by the Deputy Commissioner, only in a few cases does the matter proceed to formal hearing and award and even more rare is the resort to the limited judicial review. The heart of any such system is the mandatory report of an injury by the employer within 10 days under § 930(a). A failure to file subjects the employer to the sanctions of civil penalties, § 930(e). With this the Act moves swiftly to require affirmative action by the employer. If disability persists for the statutory minimum, payments of compensation must be commenced within 14 days, § 914(b). The only thing which excuses this is a formal controversion filed by the employer, § 914(d). Failure to commence and continue payment of compensation benefits and to furnish requisite medical aid, care and attention where no controversion is filed subjects the employer again to substantial sanctions, §§ 914(e) and (f).

Was it the purpose of the Supreme Court to put these mandatory provisions of the law in an abandoned state? Since what is twilight for one is hardly the brilliance of daytime for another, is the employer entitled to ignore their mandate on the supposition that the employee, looking upon this as candid judicial uncertainty, will or might wend his way toward or accidentally get into State jurisdiction? If the choice is for the employee and it need not be made, or at least articulately asserted with persistence until long[15] after the injury,

13. Stumberg, Injuries Incurred in Offshore Drilling Operations, University of Texas, Institute on Offshore Drilling Operations, December 1957, p. 14, "All of us yearn for certainty, yet most of us, as lawyers, recognize that there cannot always be a Plimsoll Line."

14. The Annual Report, Department of Labor 1957, p. 70, describes the operation: "Under the law, the first payment of compensation must be made within 14 days after the employer has knowledge of the injury or death. Known as the direct payment method, the record of timeliness of payment has been singularly good on the part of the majority of private insurance companies and self-insurers. Formal hearings and court proceedings are the exception. Because of the large number of injury cases involves, however, the amount of administrative work necessarily involved in the district offices is impressive. During 1957, there were 33,981 personal interviews with claimants and employers or their representatives, 11,848 informal conferences relating to claims, 8,027 independent medical examinations ordered, and 342 formal hearings completed."

15. Unless Moore's and Baskin have altered this too, and two Courts of Appeals have thus far inferentially declined to so hold, Newport News Shipbuilding & Dry Dock Co. v. O'Hearne, 4 Cir., 192 F.2d 968; Western Boat Building Co. v. O'Leary, 9 Cir., 198 F.2d 409, 1952 AMC 1639, the receipt or payment of compensation benefits under one Act, State or Federal, does not work an estoppel nor is it res judicata as to a subsequent claim made under the other. Gilmore & Black, The Law of Admiralty, § 6–51. Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670, 1936 AMC 254; Massachusetts Bonding & Insurance Co. v. Lawson, 5 Cir., 149 F.2d 853, 1945 AMC 878. See also Kaiser Co., Inc. v. Baskin, 340 U.S. 886, 71 S.Ct. 208, 95

what is to occur in the interim?[16] Is the phrase "if recovery for the disability * * * through workmen's compensation proceedings may not validly be provided by State law * * *," § 903(a), to be now so loosely applied that, whether for constitutional or statutory construction considerations, both Acts may be and are applicable so far as civil and criminal sanctions against the employer are concerned until such time as the employee exerts his right to choose the State remedy? These are not the artificial, academic apprehensions of theoretical hypotheses. These are real and live and present concerns. Where workable certainty, even at the price of "Theoretic illogic," (concurring opinion Davis, supra) was the aim, we now see about us in this Circuit, every component of which has substantial maritime interests, the unfortunate sight of conflicts in formerly clear areas. These conflicts arise almost wholly from the accidental absence of diversity of citizenship or requisite amount in controversy with the result that, in questions under the particular State compensation act, it is a State Court, rather than a Federal Court, that must apply Federal constitutional principles and Federal principles for the construction of a Federal statute. In three very recent incidents occurring in Louisiana and Texas, both States with extensive maritime activities, State Courts have adjudged the State Compensation Acts applicable to injuries sustained while doing work of a direct and substantial maritime nature which formerly would have been clearly under the Federal Act without even the slightest suggestion of "local concern" or other modifications on the strict Jensen principle.

In two, Richard v. Lake Charles Stevedores Inc., La.App., 95 So.2d 830, and Sullivan v. Travelers Ins. Co., La.App., 95 So.2d 834, the employee was injured while working as a longshoreman in the hold of an ocean-going vessel loading and unloading cargo. This is the precise employment described in the Longshoremen's Act and was indeed the very activity which gave rise to Jensen, to Nogueira v. New York, N. H. & H. R. Co., 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754, 1930 AMC 763, to Employer's Liability Assurance Corp. v. Cook, 281 U.S. 233, 50 S.Ct. 308, 74 L.Ed. 823, 1930 AMC 760, to Northern Coal & Dock Co. v. Strand, 278 U.S. 142, 49 S.Ct. 88, 73 L.Ed. 232, 1929 AMC 64, and more recently to Pennsylvania Railroad Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367, 1953 AMC 237. With Jensen so recently and definitely reaffirmed, it is difficult to see how the Louisiana Court could, in these words, examine into the very matter which was the main thesis of Jensen: "And how can the sustaining of plaintiff's election work material prejudice or disrupt the uniformity of the general maritime law?" Richard v. Lake Charles Stevedores, Inc., supra, 95 So.2d at page 832. And yet the Court did. More unsettling, what the Louisiana Court did was not undone by the Supreme Court for certiorari was denied, 355 U.S. 952, 78 S.Ct. 535, 2 L.Ed.2d 529. This latter circumstance, while always difficult to rationalize, we regard as of little mo-

L.Ed. 643, affirming 89 Cal.App.2d 632, 201 P.2d 549.

16. The Annual Report of the administracion of the Longshoremen's Act, note 14, supra, demonstrates that large numbers of employees, including those in Flowers' status, are involved, and that fulfillment of its purpose demands routine, regular, certain, positive administration:

"It is believed that close to 400,000 longshoremen, shipyard repairmen, and other maritime workers are affected. * * * Maritime employment, including shipyard repair operations, showed a 14.4 percent increase in number of injuries reported * * *."

For 1957 there were 79,820 injury/death cases reported. During the same period 79,212 cases were closed with compensation benefits (excluding medical) totaling $8,780,437. At the year end 15,163 cases were still active. The average for 1947–1949 is even more imposing: 114,296 reported injuries, 116,857 cases disposed of, 11,293 remaining active.

This is in contrast to the few (342) cases disposed of by formal hearings, note 15, supra.

ment. We are told too often and too plainly that the denial of certiorari is of no significance, Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Atlantic Coast Line R. Co. v. Powe, 283 U.S. 401, 51 S.Ct. 498, 75 L.Ed. 1142, for us, in the performance of our duty faithfully to interpret and apply Federal constitutional principles and interpret this Federal statute, to be swayed by State Court decisions which we think are fundamentally erroneous in a field in which, unlike Erie, it is the Federal Judiciary which has the last say.[17]

In the Texas case, Indemnity Insurance Co. v. Marshall, Tex.Civ.App., 308 S.W.2d 174, the Court, after holding that the employee's work as a ship repairman made the employment maritime in nature,[18] nevertheless concluded, with an obvious reluctance, that the State Act applied [19] because Moore's and Baskin absolutely compelled this result.[20]

Thus, in the field of the actual making of repairs [21] on an existing vessel, hereto-

17. We did this by sustaining applicability of the Federal Act as opposed to the Louisiana Act in circumstances much more cloudy in Avondale Marine Ways, Inc. v. Henderson, 5 Cir., 201 F.2d 437, 1953 AMC 432, affirmed 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77, 1953 AMC 1990; as did the 9th Circuit in Western Boat Building Co. v. O'Leary, supra, and the 4th Circuit in Newport News Shipbuilding & Dry Dock Co. v. O'Hearne, supra.

18. The Court clearly stated the basis: "Appellee [employee] was injured * * while helping repair a commissioned ship of foreign registry * * *. The vessel had long been engaged in interstate and foreign commerce * * *. It was in a floating drydock, on navigable waters of the United States, * * * in Jefferson County. The vessel was being repaired by Bethlehem Steel Corporation under a maritime contract. Appellee, a pipefitter, was in the course of his employment with that company when he received his injuries * * *. He claims to have injured himself while lifting into position in the engine room of the ship a valve of some eighty pounds weight." 308 S.W.2d at page 177.

19. The opinion points out that in the employee's statutory suit to set aside the award of the Industrial Accident Board dismissing the claim for want of jurisdiction, the plaintiff expressly limited his recovery to the sum of "$2,975 'and for no more'" for the obvious purpose of preventing removal on diversity. Otherwise this case presumably would have been removed to the Federal District Court, for the Eastern District of Texas, to which Flowers' suit was removed with subsequent transfer on joint motion, 28 U.S.C.A. § 1404, to the Southern District of Texas.

20. The Court stated: "appellant [insurance company] briefs only the jurisdictional question presented by the evidence touching the maritime nature of appellee's employment. We overrule the point, in reliance on Bethlehem Steel Co. v. Moore * * * [also citing Baskin]. See, also, Davis v. Department of Labor and Industries of Washington * * *. We are unable to draw any sound distinction between the facts of this case and those of the Moores case and the Baskin cases, and so feel that those cases must control the disposition of this one. At the same time, we confess difficulty in reconciling the Moores case and the Baskin cases with statements which are contained in the opinion in the later case of Pennsylvania R. Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367, or even with the general argument in the latter case. However, taking into consideration the history of the Moores case and of the Baskin cases, we think it cannot have been the Court's intention in the O'Rourke case to overrule those cases by implication. And the correctness of this view is attested by the fact that in the still later case of Avondale Marine Ways, Inc. v. Henderson, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77, the Moores case and the Baskin cases, as well as the Davis case, were again cited with approval. In Richard v. Lake Charles Stevedores, La. App., 95 So.2d 830, the Supreme Court of Louisiana has given even a broader effect to the Moores case, the Baskin cases, and the Davis case than we think it necessary to give them here, but we nevertheless call attention to the case as one supporting our holding." 308 S.W.2d at page 179.

21. Another Texas case of doubtful validity, apparently based on the notion rejected in Parker v. Motor Boat Sales, Inc. as well as O'Rourke, supra, that coverage

fore always considered clearly under the Federal Act, John Baizley Iron Works v. Span, 281 U.S. 222, 50 S.Ct. 306, 74 L.Ed. 819, 1930 AMC 755; Robbins Dry Dock Co. v. Dahl, 266 U.S. 449, 45 S.Ct. 157, 69 L.Ed. 372, 1925 AMC 182, the employee is apparently the one to make the choice.

What has happened in Texas and Louisiana may soon occur amongst the maritime workers of Mississippi, Florida and Georgia. If with no marginal employment, no obscurity concerning the nature and kind of work or its importance to maritime commerce, no undefined or undefinable boundaries to set it apart from land-based activity, it is nonetheless left entirely to the choice of the injured employee to determine which route he will take, then Jensen has indeed lost its vitality, the Jensen line of demarkation, reaffirmed in Parker, has been overruled, and administrative finality, emphasized in Davis is just so much makeweight. When the destructive consequences are so rife, when thirty years' experience in the operation of the Longshoremen's Act would be disturbed by introducing uncertainty and confusion where, as to these two fields of ship repairmen and longshoremen, there is Federal assurance in the everyday administration of the Act, we decline to hold that the Court had such portentous purposes [22] for Moore's or Baskin.

The outlines of a case of an injury received on navigable waters while engaged in essential repairs to an existing vessel

depends upon the nature of the principal contract of employment as being non-maritime rather than maritime is Emmons v. Pacific Indemnity Co., 146 Tex. 496, 208 S.W.2d 884, which sustained State coverage for injuries to a repairman engaged in conversion of an existing barge.

22. Showing that we do not overstate this with an alarmist's point of view, the last supplemental brief of the Employee in referring to the denial of certiorari in Richard and Marshall, supra, confidently predicts that the bars are now down:

"In disposing of the Lake Charles case, supra, the U. S. Supreme Court evident-

have long been clear and distinct. As to them, there was no twilight. Moore's and Baskin were devised to solve cases in, not to create, the twilight. The District Judge was right in holding that the Texas Act could not apply and that this was a case for the exclusive application of the Federal Act.

Affirmed.

ly swept aside all further considerations of jurisdictional disputes in cases involving either the Federal Longshore Act and the local State Workmen's Compensation Act. This intended result is. manifest by the fact that Richards was a longshoreman and so alleged himself to be a longshoreman in his suit brought under the local Louisiana Workmen's. Compensation Act [LSA-R.S. 23:1021 et seq.].

"Now it must truly be said that the U. S. Supreme Court unequivocally is on record favoring the injured party's complete right of choice of forum and local' or federal remedy, irrespective of maritime considerations at the time of his injury."