**TRAVELERS INSURANCE COMPANY and Levingston Shipbuilding Company, Appellants,**

v.

**C. D. CALBECK, Deputy Commissioner, Eighth Compensation District for the Bureau of Employees' Compensation, U. S. Department of Labor, et al., Appellees.**

No. 18302.

United States Court of Appeals
Fifth Circuit.

July 13, 1961.

Louis V. Nelson, Gordon R. Pate, Strong, Pipkin, Strong & Nelson, Charles S. Pipkin, Beaumont, Tex., for appellants.

Morton Hollander, Chief Appellate Sec., Dept. of Justice, David L. Rose, Atty., Dept. of Justice, Washington, D. C., Herman Wright, Houston, Tex., J. E. Bass, Jr., Lake Charles, La., William H. Orrick, Jr., Asst. Atty. Gen., T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., for appellee Culbeck.

Mandell & Wright, Houston, Tex., for appellees McGuyer.

Before CAMERON, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

We have again the old, old contest: is the claim for injuries to an amphibious worker under the State Compensation Act? Or is it under the Federal Act?[1] Phrasing it differently, the question is all embracing. As to an occurrence of this type, has there been doubt and uncertainty in the past as to coverage? If not, what is there about contemporary developments which should now make twilight out of that which has been thought to be as clear as day or as black as night?[2] Specifically the question presented is whether a person injured while working on an uncompleted vessel then launched and afloat in navigable waters, but still under construction, is covered by the State Act, or the Longshoremen's Act, or perhaps either one or both depending on the injured party's ultimate choice under the "first come first served"[3] Twilight Zone option?

Again, as we remarked before, "the facts, strikingly simple, neither complex nor conflicting, are not the cause of bewilderment." Flowers v. Travelers Ins. Co., 5 Cir., 1958, 258 F.2d 220, at page 221. The Employer operates a shipyard on the Sabine River. At the shipyard it builds new vessels and also repairs completed ships. Its employees, including welders, perform work both on repairs and on construction. There is constant interchange between the two types of work. The Employee McGuyer on July 15, 1957, was injured while working on an oil drilling barge then under construction. The barge had been launched and the superstructure was being built. While McGuyer was welding on the port side of the deck, a tank exploded causing severe head injuries from which he died three days later. The drilling barge had never been used in navigation, and there was still substantial work to be done before it could be so utilized.

In proceedings before the Deputy Commissioner[4] the original Compensation Order made on February 18, 1959, rejected the claim for death benefits filed by the widow and children. The Deputy Commissioner went right to the heart of the matter. As the reason for rejecting the claim, he formally stated that "It has not been held that the work on an uncompleted vessel comes within the provisions of the Longshoremen's and Harbor Workers' Compensation Act."

But while that was thought to be the final order it was not. Indeed, a year and a half later the final Award now under review was a complete reversal and held that the Longshoremen's Act did apply. In review proceedings that Order was twice remanded to the Deputy Commis-

---

1. Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950.

2. By rare coincidence the identical question is before us in a separate case from a different district. Argued and submitted on the same day, it has been decided this day. Avondale Shipyards, Inc. v. Donovan, Deputy Commissioner, 5 Cir., 1961, 293 F.2d 51.

3. Davis v. Department of Labor of Washington, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246, 1942 A.M.C. 1653, was so characterized in De Bardeleben Coal Corp. v. Henderson, 5 Cir., 1944, 142 F. 2d 481, at page 483.

4. United States Department of Labor, Bureau of Employees' Compensation.

sioner.[5] Except that there was an elaboration on essentially inconsequential details, the last Award of May 13, 1960, with no explanation for the change of decision, now declared the injury subject to the Longshoremen's Act and made an Award of death benefits. The record, as such, does not spell out this change of heart. On the argument, however, there was general agreement by all counsel that this change in the Deputy Commissioner's decision was largely the result of a like change of view by the Bureau of Employees' Compensation concerning the underlying legal question of coverage for new construction. For reasons we later discuss, we regard this change as significant, not because either counsel or court consider this an intrusion into the independent adjudicatory functions of the Deputy Commissioner, but rather as a convincing demonstration that until these two cases [6] there was no serious contention that new construction work was covered.

While this problem has its genesis in the constitutional travail which gave birth to Jensen,[7] which despite severe criticism displays a remarkable tenacity so that each year sees fresh evidence of its continued vitality, Kossick v. United Fruit Co., 1961, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56, our inquiry is no longer on that level. Now it is simply a question of statutory construction to determine, not how far Congress could have gone, or what Congress had to do, but rather what Congress did.[8] That question of statutory construction centers around § 903(a) [9] which defines the coverage of the Longshoremen's Act in terms which are jurisdictional in nature and impact. Crowell v. Benson, 1932, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598. Precisely the · question relates to prerequisite [2] "if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

We start with an historic legal fact. In 1922 five years before the enactment of the Longshoremen's Act in response to the constitutionally unsuccessful efforts to adopt state compensation laws for maritime workers, the Supreme Court dealt with this very situation. With Jensen then, as now, a matter of everyday preoccupation, the Court held that Oregon could provide workmen's compensation to a person injured while working on an uncompleted vessel then under construction and afloat in navigable waters. Grant Smith-Porter Ship Company v. Rohde, 1922, 257 U.S. 469, 42 S. Ct. 157, 66 L.Ed. 321. That the line was drawn precisely on uncompleted construc-

5. Apparently the Employer took an appeal under 33 U.S.C.A. § 921(b) from the original Order of February 18, 1959. The Court remanded the case for further proceedings for the Deputy Commissioner "to reconsider the question of the situs of injury to be in Orange, Texas." By a modification award on July 30, 1959, the order was amended to show the situs to be Calcasieu Parish, Louisiana. The Order as thus amended, denying benefits for want of coverage, was again brought before the Court. On April 20, 1960, the Court again remanded it to the Deputy Commissioner "in order to permit him to make findings and conclusions in accordance with the facts and the law."

6. See note 2, supra.

7. Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086.

8. To the synopsis in Flowers, supra, 258 F.2d 220, at page 221, note 2, may be added that developed in some subsequent cases of this Court. T. Smith & Son,

Inc. v. Williams, 5 Cir., 1960, 275 F.2d 397, at pages 398–401; Atlantic & Gulf Stevedores, Inc. v. Donovan, 5 Cir., 1960, 274 F.2d 794, 1960 A.M.C. 1311, modified on rehearing 5 Cir., 279 F.2d 75; Noah v. Liberty Mutual Ins. Co., 5 Cir., 1959, 265 F.2d 547, 1959 A.M.C. 573, overruled on rehearing en banc 5 Cir., 267 F.2d 218, 1959 A.M.C. 2047; Thibodeaux v. J. Ray McDermott & Co., 5 Cir., 1960, 276 F. 2d 42.

9. The numbers in brackets [1] and [2] are inserted to emphasize the two distinctive separate jurisdictional requirements:
33 U.S.C.A. § 903(a). "Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if [1] the disability or death results from an injury occurring upon the navigable waters of the United States (including any drydock) and if [2] recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

tion versus repair of a completed vessel is demonstrated overwhelmingly by contemporary cases upholding the supremacy of admiralty and prohibiting the application of state compensation acts to injuries received by those repairing existing vessels.[10] Rejecting the contention of the injured repairman that "when hurt, he was doing work of a nature which had no direct relation to navigation or commerce; and to permit application of the State Workmen's Compensation Act would work no material prejudice to the essential features of the general maritime law as in Grant Smith-Porter Ship Co. v. Rohde * * *," the Court went on to pinpoint the very ground of distinction. "In Grant Smith-Porter & Co. v. Rohde, supra, claimant when injured was working upon an incompleted vessel—a thing not yet placed into navigation, and which had not become an instrumentality of commerce." Baizley Iron Works v. Span, supra, 281 U.S. 222, at pages 230, 231, 50 S.Ct. at page 307.

And the line which the Court drew in the pre-1927 days was the line which Congress adopted in § 903(a), note 9, supra. The Court itself has said so in the plainest of terms, often repeated.[11] "The main impetus for the longshoremen's * * * Act was the need to correct a gap made plain by decisions of this Court. We believe that there is only one interpretation of the proviso in § 3(a) which would accord with the aim of Congress; the field in which a state may not validly provide for compensation must be taken, for the purposes of the Act, as the same field which the Jensen line of decision excluded from state compensation laws. Without affirming or rejecting the *constitutional* implications of those cases, we accept them as the measure by which Congress intended to mark the scope of the Act they brought into existence." Parker v. Motor Boat Sales, Inc., 1941, 314 U.S. 244, at page 250, 62 S.Ct. 221, at page 225, 86 L.Ed. 184, 1942 A.M.C. 1.

■■ Of course in this analysis we may not ignore the Twilight Zone concept announced by Davis, supra. In effect it holds that where it is difficult to ascertain what the line is, or on which side of any such assumed line the facts put a particular case, "an injured waterfront employee" was given "an election to recover compensation under either the Longshoremen's Act or the Workmen's Compensation Law of the State in which the injury occurred." Hahn v. Ross Island Sand & Gravel Co., 1959, 358 U.S. 272, at page 273, 79 S.Ct. 266, at page 267, 3 L.Ed.2d 292. But neither Davis nor Moore[12] nor Baskin[13] were intended to make everything twilight merely be-

10. John Baizley Iron Works v. Span, 1930, 281 U.S. 222, 50 S.Ct. 306, 74 L.Ed. 819, 1930 A.M.C. 755; Robins Dry Dock & Repair Co. v. Dahl, 1925, 266 U.S. 449, 45 S.Ct. 157, 69 L.Ed. 372, 1925 A.M.C. 182; Great Lakes Dredge & Dock Co. v. Kierejewski, 1923, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756, 1923 A.M.C. 441; Gonsalves v. Morse Dry Dock & Repair Co., 1924, 266 U.S. 171, 45 S.Ct. 39, 69 L.Ed. 228, 1924 A.M.C. 1539; Messel v. Foundation Co., 1927, 274 U.S. 427, 47 S.Ct. 695, 71 L.Ed. 1135, 1927 A.M.C. 1047.

11. In Davis v. Department of Labor of Washington, 1942, 317 U.S. 249, at page 256, 63 S.Ct. 225, at page 229, 87 L.Ed. 246, 1942 A.M.C. 1653, the Court stated: "In our decision in Parker v. Motor Boat Sales * * * we held that Congress has by the Longshoremen's Act accepted the Jensen line of demarcation between state and federal jurisdiction."

Even more recently in Pennsylvania Ry. Co. v. O'Rourke, 1952, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367, 1953 A.M.C. 237, it first stated, "This act and the Jones Act provided means for indemnification for injuries for all maritime employees who were beyond the constitutional reach of state legislation." The Court went on to declare: "A quarter of a century of experience has not caused Congress to change the plan. The 'Jensen line of demarcation between state and federal jurisdiction' has been accepted." 344 U.S. 334, at page 337, 73 S.Ct. 302, at page 304.

12. Moore's Case, 1948, 323 Mass. 162, 80 N.E.2d 478, 1948 A.M.C. 1862, affirmed per curiam, sub nom. Bethlehem Steel Co. v. Moore, 1948, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417.

13. Baskin v. Industrial Accident Commission, 1949, 338 U.S. 854, 70 S.Ct. 99,

cause the injury occurred near the waterfront to one who worked in, on, under or around it. The Twilight Zone concept was "devised to solve cases in, not to create, the twilight." Flowers v. Travelers Ins. Co., supra, 258 F.2d at page 228. Indeed, Davis properly understood is a recognition that there are *some* activities and some areas in which the Jensen line is clear and distinct. As to those the command of Congress is emphatic: those on the "admiralty" side are exclusively covered by the Longshoremen's Act; those on the "maritime but local" [14] side are state.

There is here more than the normal compulsion to heed the congressional command simply because it is the law. Here there is an imperative necessity. All—courts, judges, counsel, employers and employees in the industrial maritime field, insurers and marine underwriters —deplore the uncertainty in this problem. Recognized, of course, is the inescapable fact that from the nature of this overlapping of state and federal sovereignty, the problem at times is serious and substantial and, like Mordecai at the Gate, simply will not go away. But in those areas—rare as they might be—in which there is clarity, in which the line is clearly drawn, in which it may be said with some competent assurance that it is either one or the other, effectual enforcement of the socially desirable aim of securing a speedy determinable money indemnity under the operation of automatic self-executing [15] compensation statutes requires that courts have the resourcefulness to ascertain, and when ascertained, the fortitude to stand by the declaration of an identifiable line.

■ Such considerations have cut a large figure in the disposition this Court has made in two well-defined areas. Where from contemporary action by state courts in the maritime states of this Circuit the pre-existing certainty was imperiled by the beguiling appeal of a free-wheeling election or the assertion that what had been clear was now Twilight, this Court, not without some travail of its own, hewed to the line. Longshoremen, loading or unloading vessels on navigable waters were restored once and for all to the place where Jensen put them. Noah v. Liberty Mutual Ins. Co., supra, note 8. This stand has more than restored symmetry within the federal establishment of this Circuit. It has, without a doubt, been a substantial factor in the decisions of the state courts. If federal courts who are charged primarily with the immediate responsibility of elucidating the statutory and constitutional principles which inhere in this acute problem of federalism stand fast, it encourages, if not assures, a cohesive, consistent, harmonious treatment by our counterparts in the state judiciaries. Thus, for example, did the confidence in the ultimate rightness of the decision of Louisiana courts, expressed without reservation in T. Smith & Son, Inc. v. Williams, supra, 5 Cir., 275 F.2d 397, turn out to be well founded. This was accomplished without the aid of the much sought for Federal injunction against prosecution in the state court of claims under the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1021 et seq., or the necessity or artful constructions of the anti-injunction statute, 28 U.S.C.A. § 2283. Louisiana has now spoken in

94 L.Ed. 523, reversing, per curiam, 89 Cal.App.2d 632, 201 P.2d 549; on remand to the state court, 97 Cal.App.2d 257, 217 P.2d 733, affirmed per curiam, Kaiser Co., Inc. v. Baskin, 1950, 340 U.S. 886, 71 S.Ct. 208, 95 L.Ed. 643.

14. The Jensen problem does not arise unless there is a conjunction of (1) an injury and (2) its occurrence on navigable waters. Where the injuries occur on land or what is deemed an extension of land, the maritime law has no application at all. State Industrial Commission of State of New York v. Nordenholt Corp., 1922, 259 U.S. 263, at pages 275–276, 42 S.Ct. 473, at page 475, 66 L.Ed. 933.

15. We have several times outlined the self-executing nature of the Longshoremen's Act. Flowers v. Travelers Ins. Co., supra, 258 F.2d 220, at pages 225–227; Atlantic & Gulf Stevedores, Inc. v. Donovan, 5 Cir., 1960, 274 F.2d 794, at pages 799–801; and T. Smith & Son, Inc. v. Williams, supra, 275 F.2d 397, at page 400, note 11.

terms as positive as Noah. Longshoremen are not in the Twilight. Longshoremen are in the federal area only. The Louisiana State Compensation Act may not validly apply to them. Ellis v. Travelers Ins. Co., La.1961, 129 So.2d 729; consolidated with Stepter v. T. Smith & Son, Inc., 1961, 241 La. 465, 129 So.2d 740, affirming the Court of Appeals, 123 So.2d 780 and 788, respectively.

Likewise, in the face of some state court decisions which we have expressly declined to approve or follow, have we spoken in positive terms as to ship repairers. A ship repairer is not in the Twilight. He is in the federal domain. The State Act may not validly apply. Flowers v. Travelers Ins. Co., supra, 258 F.2d 220.

It may seem to be unimportant that a restricted category of workers on new construction should be classified so sharply. But it is of such stuff that the certainty so badly needed in the routine operation of any compensation program will come. The converse is true. The moment what has been thought to be daylight or dark now becomes Twilight, the whole process becomes encumbered with the collateral and disruptive controversy which comes to an end authoritatively only after a long struggle culminating in a Noah or a Flowers decision.

■ The Supreme Court drew the line. For those working on uncompleted vessels afloat state compensation acts may validly apply. Congress adopted that line in § 903(a). There is no shadow. There is no obscurity. There is no uncertainty. It is as clear as it was in 1922 that such injuries are for state compensation.

None of the arguments offered to overcome this simple, but positive, lesson of history in action is of any merit. The main contention is that Grant Smith-Porter Co. was a "maritime but local" case. Two things are then asserted. The first is that the legislative history, meager and scarce as it is on this point,[16] made no reference to the "local concern" doctrine. This rests in part on the fact that the Committee Report in its statement that maritime workers are "unfortunately * * * excluded from" state laws and that the "Supreme Court has more than once held that Federal legislation cannot, constitutionally, be enacted that will apply State laws to this occupation" cited, in addition to Jensen, only the two cases holding Congress could not adapt state legislation.[17] That, it is urged, demonstrates that Congress was not legislating with the other cases in mind. But the Supreme Court has not read the legislative history that narrowly (see note 11, supra and appended text). When reference was made to Jensen, Congress thought, just as do judges, courts and lawyers today, of the whole thing turned loose by that auspicious doctrine. Part of that struggle, inherently part and parcel of the compelling supremacy of the admiralty in the areas where uniformity was essential, was the reflex of that—the area in which application of local laws would not work any "material prejudice to the * * * general maritime law," Western Fuel Co. v. Garcia, 1921, 257 U.S. 233, 42 S.Ct. 89, 90, 66 L.Ed. 210.

■ That concept of maritime but local is still valid.[18] The problem is all wrapped up together. The name Jensen is a shorthand abbreviation that embraces all. This is manifest from the very recent declaration by the Court in Kossick v. United Fruit Co., 1961, 365 U.S. 731, 81 S.Ct. 886, 892, 6 L.Ed.2d 56, at page 62. "This brings us, then, to the remaining, and what we believe is, the

16. See the Senate Judiciary Committee Report, S.R. 69 Cong. 1st Sess., Vol. 3, Rep. 973, p. 916; and H.R. 1767, 69 Cong.2nd Sess., p. 19.

17. These were Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 40 S.Ct. 438,

64 L.Ed. 834; State of Washington v. W. C. Dawson & Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646, 1924 A.M.C. 403.

18. See note 14, supra.

controlling question: whether the alleged contract, though maritime, is 'maritime and local,' Western Fuel Co. v. Garcia, 257 U.S. 233, 242 [42 S.Ct. 89, 90, 66 L.Ed. 210], in the sense that the application of state law would not disturb the uniformity of maritime law, Southern Pacific Co. v. Jensen, 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086] * * *." And in the context of this compensation struggle, like language was used in Hahn v. Ross Island Sand & Gravel Co., supra, 358 U.S. 272, 79 S.Ct. 266, 267, 3 L.Ed.2d 292. Of Davis the Court said, "* * * we recognized that in some cases it was impossible to predict in advance of trial whether a worker's injury occurred in an operation which, although maritime in nature, was so 'local' as to allow state compensation laws validly to apply under the limitation of Southern P. Co. v. Jensen * * *." In view of these strong contemporary recognitions of the vitality of the maritime but local concept and our present "clear duty to consider carefully what the law is on this important and far-reaching question," River Terminals Corp. v. Southwestern Sugar & Molasses Co., 5 Cir., 1958, 253 F.2d 922, at page 925, 1958 A.M.C. 1534, affirmed and remanded 1959, 360 U.S. 411, 79 S.Ct. 1210, 3 L.Ed.2d 1334, 1959 A.M.C. 1631; 274 F.2d 36, 1960 A.M.C. 2064, expressions in some of our prior cases cannot be controlling. In several it has been said or implied that the consequence of the enactment in 1927 of the Longshoremen's Act was a congressional declaration that "maritime but local" no longer applied. The reasoning essentially was that by virtue of the Longshoremen's Act "Congress intended to exercise to the fullest extent all the power and jurisdiction it had over the subject-matter." Continental Casualty Co. v. Lawson, 5 Cir., 1933, 64 F.2d 802, at page 805, 1933 A.M.C. 794. At another time it was phrased this way. "No ground should be yielded to state jurisdiction in cases falling within the principle of the Jensen case * * *," De Bardeleben Coal Co. v. Henderson, supra, 142 F.2d 481, at page 484. But as the recent cases show without doubt, this ignores element [2], see note 9, supra, of the coverage clause. That was made plain in Davis, supra. After reviewing the unsuccessful efforts of Congress to adopt state compensation acts, it said of the Longshoremen's Act: "Here again, however, Congress made clear its purpose to permit state compensation protection whenever possible by making the federal law applicable only 'if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by state law.'" 317 U.S. 249, at pages 252–253, 63 S.Ct. 225, at page 227. And O'Rourke and Hahn are fresh reminders that element [2] makes the inquiry indispensable. Moreover that inquiry, when made, ultimately has to be in the classic terms embodied in the "maritime but local" formula.[19]

This analysis disposes, at the same time, of all of the drydock or marine railway cases [20] even though plausible arguments from analogy may be con-

---

19. In Davis the formula was translated into these terms: "* * * It must be remembered that under the Jensen hypothesis, basic conditions are factual: Does the state law 'interfere with the proper harmony and uniformity of' maritime law?" Davis v. Department of Labor, supra, 317 U.S. 249, at page 254, 63 S.Ct. 225, at page 228, 87 L.Ed. 246.

20. See from this Court: Maryland Casualty Co. v. Lawson, 5 Cir., 1939, 101 F.2d 732, 1939 A.M.C. 129; Massachusetts Bonding & Ins. Co. v. Lawson, 5 Cir., 1945, 149 F.2d 853, 1945 A.M.C.

878; Avondale Marine Ways v. Henderson, 5 Cir., 1953, 201 F.2d 437, 1953 A.M.C. 432, affirmed 346 U.S. 366, 74 S. Ct. 100, 98 L.Ed. 77, 1953 A.M.C. 1990. Also from other Circuits, United States Casualty Co. v. Taylor, 4 Cir., 1933, 64 F.2d 521, 1933 A.M.C. 1200, no longer followed, see Travelers Ins. Co. v. McManigal, 4 Cir., 1944, 139 F.2d 949, 1944 A.M.C. 377, and Newport News Shipbuilding & Dry Dock Co. v. O'Hearne, 4 Cir., 1951, 192 F.2d 968; Western Boat Bldg. Co. v. O'Leary, 9 Cir., 1952, 198 F.2d 409, 1952 A.M.C. 1639.

structed that if a marine railway on land is within the coverage, a floating uncompleted hull should likewise be. But these cases do not overcome the categorical pre-1927 holding, adopted by Congress in § 903(a), that injuries on an uncompleted vessel afloat but still under construction may, in the words of the statute, be "validly * * * provided by state law."

Nor does O'Rourke, supra, require any different result. We pointed out in Flowers that this case in the resolution of some of these problems "has, in our judgment, been given altogether too little attention," 258 F.2d 220, at page 223. The case, we stated, "added the further and entirely new concept that where coverage of § 903(a) is applicable, the exclusive liability of § 905 does not depend on the nature or character of the work being done by the injured employee as long as (1) that injury occurs on navigable waters and (2) the employer is such a person 'any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States * * *,' § 902(4)." 258 F.2d 220, at page 224. But that does not come into play until it is first determined whether the case is within § 903(a) and that requires a finding under element [2], see note 9, supra.

█ As a final thrust it is then insisted that even though "maritime but local" still survives, this is a Twilight case under Davis. But what, apart from these very decisions of the two Deputy Commissioners affirmed by two District Courts, brings about the haze of uncertainty? It was clear enough for the Deputy Commissioner to first rule that "It has not been held that the work on an uncompleted vessel comes within the provisions of the Longshoremen's * * * Act." For this February 1959 declaration the Administrator acting within the confines of the Fifth Circuit had some fairly substantial, if not infallible, grounds in the expressions which we made in 1958 in Flowers. To acknowledge that this statement may perhaps properly be characterized as dicta does not detract from the fact that this Court in drawing the line for ship repairers thought it necessary to consider that group in contrast to those engaged in new construction and in doing so used very positive language. "In contrast to" repair of a completed vessel, we declared, "work on an uncompleted hull before it has become a ship is not under Federal coverage and is, on the contrary, under State jurisdiction: Grant Smith-Porter Ship Co. v. Rohde * * *," 258 F.2d 220, at page 222, note 5.[21]

It is surprising, indeed, that with Grant Smith-Porter Co. still very much alive in its 49th year and the Longshoremen's Act now in its 4th decade of operations, a thing as well settled as this has suddenly become confused. Davis with all of its "Theoretic illogic," 317 U.S. 249, at page 259, 63 S.Ct. 225, at page 230, 87 L.Ed. 246 (concurring) is, as the Court's decisions reflect, "a practical solution to a practical problem," 358 U.S. 272, at page 274, 79 S.Ct. 266, at page 268 (dissenting). It does not serve that function if it is used as a basis for finding new uncertainty, of creating, not solving, doubt.

It is no answer to urge that the distinction at times conceivably may produce results that are extremely fine. That is the inevitable likelihood in dealing with strict jurisdictional lines. The Constitution at times sets up a barrier at the water's edge. It probably does not make much sense from an operational standpoint that a longshoreman injured while handling one end of a bale of cotton on the dock has a state remedy only whereas

---

21. It would be doctrinaire to quibble over the phrase "before it has become a ship" as does the Deputy Commissioner's brief in reliance on Tucker v. Alexandroff, 1902, 183 U.S. 424, 22 S.Ct. 195, 46 L. Ed. 264. In any event, in a situation involving the nature of the building of a ship, in contrast to the repair of an existing vessel, the Supreme Court sharply restricted the Tucker case. Thames Towboat Co. v. Schooner Francis McDonald, 1920, 254 U.S. 242, at page 244, 41 S.Ct. 65, at page 66, 65 L.Ed.2d 245.

his counterpart injured when the other end drops while he stands with both feet on the ship's deck must go the federal route. Nor is it any more appealing that a welder fabricating a repair fitting on the dock adjacent to a completed ship is a state case whereas a fellow welder on the ship's deck working on precisely the same fitting must look exclusively to the Longshoremen's Act.

■ We know by now that nothing written in this field is the last word. All it can be is "the latest word." T. Smith & Son, Inc. v. Williams, supra, 275 F.2d 397, at page 407. Until there is a further word, this Court, for one at least, has three clear-cut categories: (1) longshoremen working on a ship and (2) repairmen working on a completed vessel are under the Longshoremen's Act; (3) persons working on an uncompleted vessel afloat but under construction are covered by the state act. Thus do we afford to "these hard-working men, engaged in a somewhat hazardous employment, the justice involved in the modern principle of compensation * * *" [22] by a proceeding which is certain and swift and virtually self-executing. The congressional policy reflected in element [2] of § 903(a) has freed this remedy for these workers from the agony of case-by-case adjudication with the portentous constitutional overtones [23] involved in nearly every such claim and which, for scholars and historians may be interesting, if not decisive, but which hardly offer a solution to the pressing, immediate, urgent problem of the injured worker, his employer and its insurance carrier.

The compensation order was not in accordance with law and must be set aside. 33 U.S.C.A. § 921(b).

Reversed and rendered.

---

22. S.R. 69th Cong., 1st Sess., Vol. 3, Rep. 973, p. 916; see note 16, supra.

23. This is no better illustrated than in the complex field of maritime death actions. See Thiobodeaux v. J. Ray McDermott & Co., 5 Cir., 1960, 276 F.2d 42, at page 47, note 6, and Emerson v. Holloway Concrete Products Co., 5 Cir., 1960, 282

F.2d 271, at page 281, notes 10 and 11 (dissenting) for a summary of the shifting position and alignment of the several Justices; and see Currie, Federalism and Admiralty, The Devil's Own Mess, 1960, The Supreme Court Review 158; Baer, At Sea With The United States Supreme Court, 38 N.C.L.Rev. 307 (1960).