**SOUTHERN CALIFORNIA PETROLEUM CORPORATION, Mohawk Petroleum Corporation and Kewanee Oil Company, Appellants,**

v.

**George W. HARPER, Appellee.**

**No. 17802.**

United States Court of Appeals Fifth Circuit.

Jan. 8, 1960.

W. B. Browder, Jr., Midland, Tex., W. P. Dornaus, Tulsa, Okl., for appellants, Stubbeman, McRae, Sealy & Laughlin, Midland, Tex., of counsel.

Joe H. Foy, Hardeman, Smith & Foy, San Angelo, Tex., for appellee, Grindstaff & Grindstaff, Ballinger, Tex., of counsel.

Before HUTCHESON, JONES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

In this case the plaintiffs-appellants charge the appellee with attempting to relitigate in a state court the issues in a suit decided between the same parties in the federal court in 1955; appellants ask for an injunction to restrain the appellee from taking any action in his state court proceeding. The appellee charges that in the instant case appellants are attempting to litigate in the federal court the issues previously raised in a suit between the same parties that appellee has pending in the state courts; appellee asks that the suit be dismissed.

### I.

For four or five years the appellee, George Harper, and the appellants, Southern California Petroleum Corporation, Mohawk Petroleum Corporation, and Kewanee Oil Company, oil and gas lessees, have been engaged in a controversy over development of a lease on Harper's property.[1] In 1955 Harper sued Southern California and Mohawk in the United States District Court for the Northern District of Texas, complaining that the lease had not been

---

1. The appellee Harper is the owner of 640 acres of land in Runnels County, Texas. In December 1949, Harper and his wife granted an oil and gas lease to the Guy Mabee Drilling Company. The appellants, Southern California Petroleum Corporation and Mohawk Petroleum Corporation, are assignees of the lease. When Southern California and Mohawk acquired their leasehold interest in March 1952, eleven wells had been drilled and oil was being produced on the Harper lease. They drilled seven additional wells. In the latter part of 1952 the lessees decided to build up more pressure by injecting gas into the oil-producing formation. The Railroad Commission of Texas granted permission for this operation. Four wells on the Harper lease were converted into gas injection wells. Additional oil production resulted. In 1954 appellant Kewanee Oil Company and another lessee initiated a waterflooding plan for the Cree-Sykes field, the location of the Harper lease. Southern California and Mohawk joined Kewanee and other operators in attempting to secure a unitization agreement for the field. October 25, 1954, the Railroad Commission authorized pilot waterflooding operations. The unitization agreement, signed by Southern California, Mohawk, Kewanee, three Delaware corporations, a Texas corporation, and several hundred royalty owners, was executed in November 1954. An amendment to the agreement designated Kewanee as the unit operator. Harper refused to approve or sign the unitization agreement; the Harper lease contained no unitization or pooling clause.

Pilot waterflooding operations were successful. August 9, 1955, the operators requested authority from the Railroad Commission to conduct full scale secondary recovery operations and for approval of the unitization agreement. September 15, 1955, after notice and hearing, the Commission approved the proposed plan for secondary recovery and the unitization agreement.

In 1955 Harper filed suit against Southern California and Mohawk in the United

properly developed and the wells properly operated. Harper lost the suit.

In October 1958 Harper again filed suit against the oil companies, this time in the District Court of Runnels County, Texas, alleging that the oil companies, negligently or in bad faith, failed to develop the lease as it should have been developed. Harper based his suit primarily on the contention that a waterflood program commenced on his land about August 1, 1958 would destroy the value of the oil and gas under the land and also the value of his royalty interest. Harper asked for damages, for an injunction, and for cancellation of the lease. Appellants removed the suit to the District Court for the Northern District of Texas as Civil Action 781. Kewanee removed the suit as Civil Action 782.

In December, 1958 the oil companies filed suit against Harper, characterizing the complaint as an action to remove a cloud on their title and asking for a declaratory judgment in regard to their development of the lease. Harper moved to remand Civil Actions 781 and 782 on the ground of lack of diversity, since some of the defendants were also residents of Texas. He moved to dismiss the instant suit (1) on the ground that the resident operators who had not been joined, were indispensable parties and (2) on the ground that the suit was an attempt to litigate in the federal court the same issues previously presented in his pending suit in the state courts. During the course of the argument on the motions to remand, the oil companies obtained leave of court to file an amended complaint in the instant suit. In the amended complaint the oil companies asked for an injunction restraining Harper from prosecuting his state court action, alleging that he was relitigating issues adjudicated in the suit by Harper against Southern California and Mohawk, decided by the same trial judge who decided the 1955 case. The trial judge refused the injunction, granted Harper's

States District Court for the Northern District of Texas alleging that the defendants failed to develop the lease properly. He alleged that some of the eighteen wells drilled on the leased land had been allowed to become unproductive, and others had failed to produce the sixty five barrels per day allowable. He averred that eleven more wells should be drilled to allow at least one well on each twenty acres. He claimed also that the lessees were at fault in incurring penalties for allowing eight of the wells to have an excessive gas-oil ratio. He alleged that oil and gas had been sold and no accounting ever made. Southern California and Mohawk denied the allegations. They pleaded that Harper's participation had been requested and he had rejected the plan. Harper replied that the gas injection plan had not been properly carried out—causing a loss in production. Harper further asserted that the waterflood plan was not fair to him because his participating share was based on production from the Harper lease at a time when it was not being properly developed. The case was argued before a jury, and the verdict was for the operators. October 25, 1955, the court entered a judgment for Southern California and Mohawk, ordering that Harper take nothing by the suit and that Southern California and Mohawk

recover title and possession of the leasehold.

October 3, 1958, Harper filed suit in the District Court of Runnels County, Texas, against Southern California, Mohawk, and Kewanee. He joined the other operators—three Delaware corporations, a Massachusetts corporation, a Texas corporation, and five individuals who are residents and citizens of Texas. The basis of this suit was that a waterflooding program commenced August 1, 1958 would destroy the value of the oil and gas underneath his land and damage his royalty interest. There were allegations of failure to develop, failure to furnish offset production, and a conspiracy to force him to join in an unfair unitization agreement. Harper asked for damages, an injunction restraining the injunction of salt water into wells on his land, and cancellation of the oil and gas lease. Southern California and Mohawk removed the state court suit to the United States District Court for the Northern District of Texas, where it was docketed as Civil Action No. 781. Kewanee removed the state court suit to the same federal court, Civil Action No. 782. Southern California, Mohawk, and Kewanee filed the present suit in the same court as an original action against Harper.

motion to remand actions 781 and 782, and granted also Harper's motion to dismiss the instant suit. We affirm.

## II.

Appellants, relying on Section 2283 of the Judicial Code, contend that the trial court erred in refusing the injunction to stay proceedings in the state court. They argue that the injunction is needed "to protect or effectuate" the judgment in the 1955 suit that Harper allegedly is seeking to relitigate.

Section 2283 of the Judicial Code, 28 U.S.C.A. § 2283 provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as \* \* \* authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

In a gloss on this section the Supreme Court declared, "Congress made clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation". Amalgamated Clothing Workers v. Richman Bros., 1955, 348 U.S. 511, 75 S.Ct. 452, 454, 99 L.Ed. 600.[2] Federal courts have found Section 2283 something less than clear, even with benefit of Amalgamated Clothing Workers v. Richman Bros. In a recent decision Judge Tuttle, for a majority of this Court reviewed the history of Section

2283 and the prior decisions, finding a "somewhat troubled jurisdictional area \* \* \* [that] as of yet [has] been insufficiently explored". Jacksonville Blow Pipe Co. v. Reconstruction Fin. Corp., 5 Cir., 1957, 244 F.2d 394, 396. In that case Judge Tuttle stated that in view of the legislative intent to overturn Toucey v. New York Life Insurance Co., 1941, 314 U.S. 118, 62 S.Ct. 139, 86 L. Ed. 100,[3] Section 2283 carried an implied exception in relitigation cases, allowing issuance of an injunction prohibiting the creditor of bankrupt from prosecuting a state court action to replevy certain property from the purchaser of the bankrupt. See also Jackson v. Carter Oil Co., 10 Cir., 1956, 179 F.2d 524, certiorari denied 1950, 340 U.S. 812, 71 S.Ct. 39, 95 L.Ed. 597 and Berman v. Denver Tramway, 10 Cir., 1952, 197 F.2d 946.

## III.

Section 2283 is essentially a rule of comity, and the demand here that a federal court interfere with state court proceedings is directed to the discretion of the federal court. This discretion should be exercised in the light of the historical reluctance of federal courts to interfere with state judicial proceedings. This Court has often demonstrated such reluctance.[4] "[I]nterference with the orderly and comprehensive disposition of

---

2. In Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600, a majority of the Supreme Court refused to expand the exceptions to include the case where the exclusive jurisdiction of a federal agency is involved but where the injunction is requested by an individual instead of the NLRB. The majority opinion seems to reaffirm the somewhat inflexible policy of narrow confinement expressed in Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100. "This is not a statute conveying a broad general policy for appropriate ad hoc application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions." 348 U.S. 511, 515–516, 75 S.Ct. 455, 99 L.Ed. 600. But see notes, 69 Harv.L.Rev. 180 (1955); 41 Va.L.Rev. 815 (1955); 54 Mich.L.Rev. 426 (1956). 46 Cal.L.Rev. 290 (1958).

3. "The [third exception] overrules the holding of the Toucey case and adopts the theory of the 'relitigation' cases, which Toucey had rejected. In other words where a federal court has adjudicated a matter, this Court can protect or effectuate its judgment, whether in personam or in rem, by enjoining, at the instance of the prevailing party, relitigation of the matter." Moore, Commentary of the U. S. Judicial Code (1949), p. 410.

4. "Federal Courts will enjoin proceedings in State Courts with reluctance \* \* " Red Rock Cola Co. v. Red Rock Bottlers, 5 Cir., 1952, 195 F.2d 406, 409. See also Employers' Liability Assur. Corp. v. Mitchell, 5 Cir., 1954, 211 F.2d 441, certiorari denied 347 U.S. 1014, 74 S.Ct. 869, 98 L.Ed. 1137 (declaratory relief denied by federal court when same issue was pending in state court suit).

a state court litigation should be avoided", the Supreme Court admonishes us. Brillhart v. Excess Ins. Co., 1942, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620, rehearing denied, 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed. 562.[5] Again: "The prohibition of § 2283 is but continuing evidence of confidence in the state courts reinforced by a desire to avoid direct conflicts between the state and federal courts. We cannot assume that this confidence has been misplaced." Amalgamated Clothing Workers v. Richman Bros., 1955, 348 U.S. 511, 75 S.Ct. 452, 457, 99 L.Ed. 600.

The appellants cite a number of cases in which federal courts, in order to protect a prior federal court judgment, have granted an injunction restraining state action. In each instance, however, the action constituted a direct assault on a prior federal court judgment.[6] That is not the case here. Harper does not attack the 1955 federal court judgment in the action in state court. He concedes that the 1955 judgment is fully determinative of any alleged breaches of the lease occurring prior to October 25, 1955. In the state court suit Harper seeks to litigate events that have occurred subsequent to the 1955 suit.

It is true that some of the allegations in Harper's complaint in the state court action refer to issues raised in the 1955 litigation, but we see no objection to referring to such matters for background purposes. Basically, in the state court action Harper's complaint is grounded on the waterflood recovery program and its effect on his royalty interest. Full scale waterflood operations were not begun until 1955 and not authorized until March 18, 1957. Taken as a whole, the complaint is principally concerned with actions taken by the appellants after the 1955 suit, and is not an attempt to relitigate matters determined by the 1955 suit.[7]

We take the view that a complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings. If we err, all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res adjudicata and collateral estoppel.

On the showing made by the appellants in this case, even the most liberal view of implied exceptions to Section 2283 would not justify reversal of the court below. The trial judge was the same trial judge who sat on Harper's 1955 suit. He was peculiarly qualified to compare the issues, determine the question of relitigation, and decide the propriety of an injunction. He did not

---

**5.** In that case the liability of an insurer was an issue in a garnishment proceedings in state court. The insurer sought a preliminary determination of this issue by bringing a declaratory judgment action in federal district court. The Supreme Court held that the petitioner's motion to dismiss was addressed to the discretion of the federal district court, and, reversing the Circuit Court of Appeals, remanded the case so that the district court could properly exercise its discretion.

**6.** Riverdale Cotton Mills v. Alabama & Georgia Mfg. Co., 1905, 198 U.S. 188, 25 S.Ct. 629, 49 L.Ed. 1008; Jacksonville Blow Pipe Co. v. R.F.C., 5 Cir., 1957, 244 F.2d 394; Berman v. Denver Tramway Corp., 10 Cir., 1952, 197 F.2d 946; Jackson v. Carter Oil Co., 10 Cir., 1950, 179 F.2d 524, certiorari denied 340 U.S. 812, 71 S.Ct. 39, 95 L.Ed. 597.

**7.** In his state action Harper alleged that the pilot waterflood program destroyed every well in the vicinity of the injection wells within a matter of months and that the unit operator had deliberately and with wrongful intent varied from the plan which called for peripheral injection around the external boundaries of the unit. He alleged that the unit operators were injecting water into wells along internal boundaries; that this deprives him of offset production on two sides of his lease; that he has lost the value of good oil well converted by the operators into salt water injection wells; that the water injection will destroy other good wells in close proximity to the injection wells; and, that it will build a salt water bank between the developed and undeveloped portions of his lease, rendering it impossible for the ultimate value of the oil and gas in his land to be realized. These allegations do not appear in the 1955 suit

abuse his discretion and he was consistent with the guiding principle underlying Section 2283—avoidance of federal-state frictions.

### IV.

■ Similar reasons underlie our affirmance of the district court's dismissal of appellants' suit. "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." Brillhart v. Excess Insurance Company of America, 1942, 316 U.S. 491, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620.

■■ The policy against federal interference with a state suit previously filed is of long standing and is a necessary objective in maintaining a balanced federal-state relationship. It is particularly applicable in a case such as the instant case when apparently the complaint filed in the federal court seeks to use the declaratory judgment statute and the equitable remedy of injunction as substitutes for a non-existent right of removal. Kaufman Rudeman, Inc. v. Cohn and Rosenberger, 2 Cir., 1949, 177 F.2d 849; Thompson v. Moore, 8 Cir., 1940, 109 F.2d 372. The policy of federal non-interference is applicable even where the identical cause is not pending in the state court, if there is the possibility, as there is here, of "an incongruous conflict" in determining questions of state law. Aetna Insurance Company v. Chicago, R. I. and Pac. R. R., 10 Cir., 1956, 229 F.2d 584.

The trial judge had the motions to remand Civil Actions 781 and 782 before him at the same time he considered the motion to dismiss the instant suit. He determined that the appellants' federal action raised the same issues as the appellee's pending state action. Dismissal

nor were these issues in any manner adjudicated by the judgment in the 1955 suit.

of the instant suit would avoid unseemly parallel proceedings by two sets of courts in which the results on the same cause might be conflicting. The issues involve state law in a field of law with which the Texas courts have long been familiar. Trial of the case in the state courts, unfettered by the shackles of diversity jurisdiction, would enable every interested party to have his day in court.[8]

We consider the result reached below legally correct, directed to avoiding federal-state frictions, and in the interests of justice.

The judgment is

Affirmed.

8. In view of this holding we consider it unnecessary to discuss the question of indispensable parties.