T. SMITH & SON, INC., Appellant,

v.

Frank WILLIAMS, Appellee.

No. 17959.

United States Court of Appeals
Fifth Circuit.

Feb. 17, 1960.

Edw. J. Boyle, Dudley A. Philips, Jr., Clem H. Sehrt, New Orleans, La., for appellant.

Max Zelden, Sam Monk Zelden, New Orleans, La., for appellee.

Before TUTTLE, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

■ This action involves Section 2283 of the Judicial Code, 28 U.S.C.A. § 2283 restricting the power of federal courts to enjoin state court proceedings. The subject matter of the action, compensation to a waterfront worker, is a sore spot in federal-state relations. The question for decision is whether a federal court may enjoin compensation proceedings brought by a longshoreman against his employer in a state court under a state act when, as federal courts see it, the longshoreman's remedy is exclusively under the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. We hold that no injunction may issue.

## I.

In 1917, in Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 525, 61 L.Ed. 1086, the United States Supreme Court reversed an award under the New York State Workmen's Compensation Act, McKinney's Consol.Laws, c. 67, § 1 et seq., to the widow of a longshoreman killed while loading and unloading cargo in New York Harbor. The court held that the plaintiff's remedy was within the exclusive jurisdiction of the federal government; application of state compensation laws to a longshoreman would "prejudice * * * the proper harmony or uniformity" of the general maritime law. The Jensen doctrine, depriving thousands of waterfront workers of the protection of state compensation laws, proved to be somewhat less than impregnable to a variety of attacks. In a series of cases the Supreme Court held that where employment, although maritime in character, pertains to local matters having only an incidental relation to navigation and commerce, it may be regulated by local rules which do not work a material prejudice to general maritime law.[1] Next came two attempts by Congress to overcome Jensen directly by legislation preserving to claimants "the rights and remedies under the Workmen's Compensation law of any state". These attempts failed.[2] Congress then enacted the Longshoremen's and Harbor Workers' Compensation Act, providing compensation coverage under federal law for workers who could not be covered under state compensation laws. 44 Stat. 1424 (1927); 33 U.S.C.A. § 901 et seq.

■ In Davis v. Department of Labor, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246, the Supreme Court curtailed further the effectiveness of Jensen. The

1. Western Fuel Co. v. Garcia, 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210; Grant Smith-Porter Ship Co. v. Rohde, 1922, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321; Sultan Railway & Timber Co. v. Department of Labor, 1928, 277 U.S. 135, 48 S.Ct. 505, 72 L.Ed. 820. But Parker v. Motor Boat Sales, Inc., 1941, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184, seems to retreat from the "maritime but local" principle; a janitor or porter with no maritime duties assisting another employee trying out a boat with an outboard motor was held to come under the federal act.

2. 42 Stat. 634 (1922); 40 Stat. 395 (1917). The Supreme Court held that the constitutional power of the federal government in admiralty and maritime jurisdiction could not be delegated to the states. Industrial Accident Commission of State of California v. James Rolph Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646; Knickerbocker Ice Co. v. Stewart, 1919, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834.

Court adopted the "twilight zone" rule: borderline employees are entitled to have their rights settled case by case in a trial, to determine whether the injury occurred in maritime activities or in activities sufficiently local to allow the valid application of state laws; some amphibious waterfront workers are entitled to the protection of state compensation acts.

The blur at the limits of the twilight zone and the application of the Davis doctrine in certain cases [3] has raised a doubt as to whether there is life in old Jensen yet.[4] But whenever a mirror is brought to see if Jensen is still breathing, Jensen revives, seemingly as vital and vigorous as ever; [5] well, almost as vital and vigorous. In two recent cases this Court, relying on Jensen, held that the compensation claims of a welder, injured while making repairs on a floating dry dock (Flowers v. Travelers Ins. Co., 5 Cir., 1958, 258 F.2d 220, certiorari denied 1959, 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582) and a longshoreman injured while loading a ship (Noah v. Liberty Mut. Ins. Co., 5 Cir., 1959, 267 F.2d 218, on rehearing reversing 5 Cir., 265 F.2d 547) are exclusively under the federal Longshoremen's and Harbor Workers' Act.

The lack of definition inherent in twilight zones and the difficulty in reconciling Davis, Moore, and Baskin [6] with Jensen, Flowers, and Noah have produced a serious conflict between Louisiana state courts and federal courts. In a carefully considered opinion, Judge Tate, for the Court of Appeal of Louisiana for the First Circuit, reviewed the jurisprudence and, on the authority of Davis, Moore, and Baskin, held that a longshoreman injured while working in the hold of an ocean-going steamer on navigable waters was entitled to recover under the Louisiana Workmen's Compensation Act.[7] Richard v. Lake Charles Stevedores Inc., La.App., 1 Cir., 1957, 95 So.2d 830, 834; certiorari denied 355 U.S. 952, 78 S.Ct. 535, 2 L.Ed.2d 529; 19 La.L.Rev. 737 (1959). In both Jensen and Noah the injured worker was a longshoreman.[8] But Louisiana courts follow Richard—Jensen, Flowers, and Noah to the contrary notwithstanding. Throughout the

---

3. Especially Moores' Case, 1948, 323 Mass. 162, 80 N.E.2d 478, affirmed Bethlehem Steel Co. v. Moore, 1948, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 (workman injured on vessel under repair in dry dock) and Baskin v. Industrial Acc. Comm., 1950, 77 Cal.App.2d 257, 217 P.2d 733, affirmed Kaiser Co., Inc. v. Baskin, 1950, 340 U.S. 886, 71 S.Ct. 208, 95 L. Ed. 643, (shipyard worker injured on board a vessel undergoing repairs), each affirmed in a short per curiam opinion. See Allen, The Twilight Zone Between the Jurisdictions of State and Federal Compensation Acts, 16 Ins. Counsel J. 202, 204 (1949).

4. See Rodes, Workmen's Compensation for Maritime Employees: Obscurity in the Twilight Zone, 68 Harv.L.Rev. 637 (1955); Comment, Has the Jensen case been Jettisoned, 2 Stanford L.Rev. 542, 546 (1950); 2 Larson, Workmen's Compensation Law, especially § 89:60; Gilmore and Black, The Law of Admiralty, pp. 350–354. See also the original opinion in Noah v. Liberty Mut. Ins. Co., 5 Cir., 1959, 265 F.2d 547. Mr. Justice Black has said: "[T]he Jensen case has already been severely limited, and has no vitality beyond that which may continue as to state workmen's compensation

laws." Standard Dredging Corporation v. Murphy, 1943, 319 U.S. 306, 309, 63 S. Ct. 1067, 1068, 87 L.Ed. 1416. cf. Puleo v. H. E. Moss & Co., 2 Cir., 1947, 159 F.2d 842, certiorari denied 1947, 331 U.S. 847, 67 S.Ct. 1733, 91 L.Ed. 1857; Guerrini v. United States, 2 Cir., 1948, 167 F.2d 352, certiorari denied 1948, 335 U.S. 843, 69 S.Ct. 65, 93 L.Ed. 393.

5. In Hahn v. Ross Island Sand & Gravel Co., 1959, 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292, the Supreme Court cited Jensen with approval and reconciled it with Davis. Again: "The 'Jensen line of demarcation between state and federal jurisdiction' has been accepted", citing Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246; Pennsylvania R. Co. v. O'Rourke, 1953, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367.

6. See note 3.

7. The Louisiana law provides specifically that "loading or unloading of cargoes of vessels" is a hazardous employment entitled to the protection of the Compensation Act. LSA–R.S. of 1950, 23:1035.

8. "[L]oading and stowing a ship's cargo * * * is a service absolutely neces-

state, Louisiana district courts uniformly accept jurisdiction of compensation suits by longshoremen under the Louisiana Act and uniformly dismiss the employer's exceptions to the jurisdiction and of no right or cause of action.[9] In Louisiana, therefore, and perhaps in other states,[10] whether a waterfront worker (even a longshoreman) has a choice of remedies depends on whether he sues in a state court or in a federal court.

An injured waterfront worker has a problem in deciding which law gives him the most benefits. But the man in the middle, caught between the state and federal acts, is the employer, unconcerned about a dent in the prized uniformity of the general maritime law but properly concerned because he may be subject to two attacks, under different laws, for what would seem to be one claim.[11] In this action the plight of the employer is

sary to enable the ship to discharge its maritime duty. Formerly the work was done by the ship's crew; but, owing to the exigencies of increasing commerce and demand for rapidity and special skill, it has become a specialized service devolving upon a class 'as clearly identified with maritime affairs as are the mariners.' " Mr. Justice Hughes in Atlantic Transport Co. of West Virginia v. Imbrovek, 1914, 234 U.S. 52, 62, 34 S.Ct. 733, 735, 58 L.Ed. 1208. In Jensen the Supreme Court said: "The work of a stevedore, in which the deceased was engaged is maritime in nature; his employment was a maritime contract; the injuries which he received were likewise maritime." 244 U.S. at page 217, 37 S.Ct. at page 529.

9. Counsel so stated in the oral argument of both this case and Atlantic & Gulf Stevedores, Inc. v. Donovan, 5 Cir., 1960, 274 F.2d 794, involving a related point, in which the record shows that the employer's exception in the state suit was dismissed. See Note, Twilight Zone on Noah 34 Tul.L.Rev. 233 (1959); Carrere, Recent Developments in Personal Injury Suits in the Tidelands, 32 Tul.L.Rev. 275, 282 (1958).

10. Indemnity Insurance Co. of North America v. Marshall, Tex.Civ.App., 308 S.W.2d 174 held that a pipefitter, injured in the engine room of a ship, came under the Texas Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq.

11. These are some of the difficulties: (1) Each act carries different definitions and different issues. Disability is defined differently in the two acts. The prescriptive periods are different. Responsibility for expenses is not the same. Residual disability may be important under the Louisiana Act but have no significance when maintenance and cure are due. The criteria for finding permanent total disability differ materially; scheduled recoveries for certain specific injuries may give the employee more compensation under the federal act, but it is easier to make out a case for permanent total dis-

ability under the Louisiana Act. (2) If the Longshoremen's and Harbor Workers' Act applies and the employer fails to pay the amount due, he bears an exposure to penalties of 10%. If the Louisiana Act applies and the employer fails to pay, he has an exposure of 12% penalties plus attorneys' fees. (3) Should the employee be entitled to maintenance and cure and should the employer fail to guess correctly as to the employee status, the employer may be liable in damages. (4) If the employer should pay the greatest weekly sum to which the employee would be entitled, in the hope of avoiding penalties, there is no assurance that he will eventually be given full credit; and the difference between the amounts due and the amounts paid may never be recovered by the employer. Under Section 6(b) of the federal act (33 U.S.C.A. § 906(b), the maximum weekly payment is $54, and the amount due for maintenance and cure varies depending on the locale and hospitalization. Under LSA–R.S. 23:1202, the maximum payment is $35. The employer's credit would be $35 of $54. (5) A longshoreman injured on navigable waters may recover under the Louisiana Act, and later, obtain a determination by the Deputy Commissioner that coverage is exclusively under the federal act. The Act specifically states that "No agreement by an employee to waive his right to compensation under this chapter shall be valid." 33 U.S.C.A. § 915(b) (1952). Even before Davis, courts held that acceptance of state benefits did not preclude a later federal claim. Massachusetts Bonding & Ins. Co. v. Lawson, 5 Cir., 1945, 149 F.2d 853; Kibadeaux v. Standard Dredging Co., 5 Cir., 1936, 81 F.2d 670. But see Dunleavy v. Tietjen & Lang Dry Docks, 1951, 17 N.J.Super. 76, 85 A.2d 343.

Judge Brown, for this Court, pointed out in Flowers, 258 F.2d 220, 225: "Unlike some State compensation acts, the Longshoremen's Act, is almost self-executing. Compensation benefits are payable and paid, medical care and attention

urged as a compelling equitable consideration for issuance of the injunction.

## II.

These are the pertinent facts. Frank Williams, a longshoreman working for T. Smith and Son, Inc., a stevedoring firm, was injured March 1, 1956, while loading barrels of asphalt on a vessel docked at the Mississippi River wharves of the port of New Orleans. As required by federal law, his employer notified the Deputy Commissioner of Labor at New Orleans, charged with administering the Federal Longshoremen's and Harbor Workers' Compensation Act, and began paying compensation benefits. Sometime in May 1958 the employer discontinued payments on the ground that the doctors had discharged Williams as able to return to work. In addition to payments for medical attention, Williams received compensation benefits of $3,896. Williams filed no claim for additional benefits under the federal act with the Deputy Commissioner of Labor at New Orleans. On November 26, 1958, however, Williams filed suit in the Civil District Court for the Parish of Orleans, Louisiana, seeking compensation benefits under the

furnished, generally without even the necessity of filing a formal claim, as such, almost universally without a formal hearing by the Deputy Commissioner, only in a few cases does the matter proceed to formal hearing and award and even more rare is the resort to the limited judicial review. The heart of any such system is the mandatory report of an injury by the employer within 10 days under § 930(a). A failure to file subjects the employer to the sanctions of civil penalties, § 930(e). With this the Act moves swiftly to require affirmative action by the employer. If disability persists for the statutory minimum, payments of compensation must be commenced within 14 days, § 914(b). The only thing which excuses this is a formal controversion filed by the employer, § 914 (d). Failure to commence and continue payment of compensation benefits and to furnish requisite medical aid, care and attention where no controversion is filed subjects the employer again to substantial sanctions, §§ 914(e) and (f). ¶ Was it the purpose of the Supreme Court to put these mandatory provisions of the law in an abandoned state? Since what is twilight for one is hardly the brilliance of daytime for another, is the employer entitled to ignore their mandate on the supposition that the employee, looking upon this as candid judicial uncertainty, will or might wend his way toward or accidentally get into State jurisdiction? If the choice is for the employee and it need not be made, or a least articulately asserted with persistence until long after the injury, what is to occur in the interim? Is the phrase 'if recovery for the disability * * * through workmen's compensation proceedings may not validly be provided by State law * * *,' § 903(a), to be now so loosely applied that, whether for constitutional or statutory construction considerations, both Acts may be and are applicable so far as civil and criminal sanctions against the employer are concerned until such time as the employee exerts his rights to choose the State remedy?" See also Atlantic & Gulf Stevedores, Inc. v. Donovan, 5 Cir., 1960, 274 F.2d 794.

Larson, summarizing the present position, takes a more relaxed view: "While the Supreme Court's handling of this problem has been criticized as confusing and contradictory, the working rule that emerges is perhaps as practical as any rule could be that attempts to sort out the intricately-intertwined activities of amphibious workers with a minimum of litigation. After all, a slight error in respect to the extent of maritime power in a particular case will neither ruin an employer nor shatter the federal constitution if it merely gives the employee the benefit of the act which happens to be the more favorable to him. The Supreme Court's lack of enthusiasm for investigating the constitutional minutiae of each attempt to classify a borderline waterfront worker no doubt stems partly from a general feeling that all the trouble is traceable to the artificial doctrine of the Jensen case, without which all this would have been avoided. If amphibious workers had simply remained under their respective state acts, just like their neighbors who work exclusively on shore, no one would have dreamed of suggesting that the result would be unfair to employer or employee, or inconsistent with the spirit and objectives of compensation legislation. If, then approximately, the same result comes about as a consequence of the Davis, Moores and Baskin cases, while it may occasion concern to students of constitutional law, there is no cause for consternation in compensation circles." 2 Larson § 89:60, p. 419.

Louisiana Workmen's Compensation law, LSA–R.S. 23:1021 et seq., and asking for a judgment in the sum of $12,000, plus interest, penalties, and costs. On February 27, 1959, the Deputy Commissioner of Labor made a "determination" [11a] that "jurisdiction in this case properly rests with the Deputy Commissioner * * * in the administration of the Longshoremen's and Harbor Workers' Compensation Act". At that point the employer brought this action to enjoin Williams from going forward with his proceedings in the state courts. The employer alleged that the federal court has exclusive jurisdiction; that the employee had been paid all the compensation to which he was entitled; that an injunction was "necessary in aid of [the federal court's] jurisdiction or [to] protect or effectuate its judgments" under Section 2283.

### III.

Section 2283, the anti-injunction statute, reads as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Section 2283 is the 1948 revised version of Section 265 of the Judicial Code of 1911, former 28 U.S.C.A. § 379.[12] Both go back to Section 5 of the Judiciary Act of 1793 providing that:

"* * * Nor shall a writ of injunction be granted to stay proceedings in any court of a state."

It has been suggested that the prohibition of federal injunctions against state proceedings was included in the Act of 1793 as a result of the opposition, intensified at that time by Chisholm v. State of Georgia, 1793, 2 Dall. 419, 1 L.Ed. 440, to extending the scope of federal jurisdiction at the expense of the states.[13] Mr. Justice Frankfurter [14] and others [15] have questioned the significance of special contemporary factors, except the prevailing prejudices against equity jurisdiction. But: "the purpose and direction underlying the provision is manifest from its terms: proceedings in the state court should be free from interference by federal injunction. The provision expresses on its face the duty of 'hands off' by the federal courts in the use of the injunction to stay litigation in a state court. * * * The Act of 1793 expresses the desire of Congress to avoid friction between the federal government and the states resulting from the intrusion of federal authority into the orderly functioning of a state's judicial process".[16]

In early cases involving federal injunctions to stay state court proceedings the courts managed to deny the injunctions without mentioning the Act of 1793, apparently assuming that federal courts had no control over state courts, except by established appellate jurisdiction.[17]

---

11a. This was not an order or judgment after a hearing on a "claim".

12. Section 265 of the Judicial Code of 1911 reads: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." This is identical with Section 720 of the Revised Statutes of 1874.

13. See Donahue, Limits of State and Federal Jurisdiction, 9 A.B.A.J. 479 (1923); Warren, Federal and State Court Interference, 43 Harv.L.Rev. 345, 348, n. 14 (1930). See Gunter v. Atlantic Coast Line R. Co., 1906, 200 U.S. 273, 292, 26 S.Ct. 252, 50 L.Ed. 477.

14. Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100.

15. Taylor and Willis, The Power of Federal Courts to Enjoin Proceedings in State Courts, 42 Yale L.J. 1169, 1171 (1933). See also Durfee and Sloss, Federal Injunction Against Proceedings in State Courts, 30 Mich.L.Rev. 1145 (1932); Barrett, Federal Injunctions Against Proceedings in State Courts, 35 Cal.L.Rev. 545 (1947).

16. Mr. Justice Frankfurter in Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 143, 86 L.Ed. 100.

17. Diggs & Keith v. Wolcott, 1807, 4 Cranch. 179, 8 U.S. 179, 2 L.Ed. 587; Orton v. Smith, 1856, 18 How. 263, 59 U.S. 263, 15 L.Ed. 393.

Later, the courts expressly applied the statutory limitation.[18] Cutting across the hands-off principle, Congress enacted statutory exceptions [19] and federal courts began to create judicial exceptions.[20] These exceptions reshaped the rule into a flexible but uncertain guide for avoiding friction between federal and state courts.

Toucey v. New York Life Ins. Co., 1941, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, was a turning point. Toucey held that a federal court could not enjoin a state court on the ground of relitigation, giving notice that the Supreme Court disapproved of judge-made exceptions to the hands-off policy and that Section 265 of the Judicial Code should be given a literal interpretation. The Court expressly overruled the relitigation cases. It recognized only two exceptions to the exclusive language of Section 265: (1) express exceptions created by statutes subsequently enacted and (2) in rem proceedings when a federal court has gained jurisdiction over the res before the state court asserts control.[21]

Toucey involved an action for a breach of contract, where the state had concurrent jurisdiction over the proceedings. In Bowles v. Willingham, 1944, 321 U.S. 503, 64 S.Ct. 641, 645, 88 L.Ed. 892, the Supreme Court upheld an injunction against state court action challenging the constitutionality of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 901 et seq. The court found authority for a federal injunction in the Act, but it also stated that Congress had placed exclusive jurisdiction in the Emergency Court of Appeals, so that "the rule expressed in § 265 which is designed to avoid collisions between state and federal authorities * * * thus does not come into play". The dissenting opinion took this holding to mean that Section 265 did not apply when federal jurisdiction was exclusive.

There is of course something to be said for the argument that federal courts should be able to prevent state courts from trespassing on a subject matter that is exclusively within the federal system.[22] But that is part of the problem that produced the Act of 1793, Sec-

---

**18.** Watson v. Jones, 1872, 13 Wall. 679, 80 U.S. 679, 20 L.Ed. 666; Essanay Film Mfg. Co. v. Kane, 1922, 258 U.S. 358, 42 S.Ct. 318, 66 L.Ed. 658; Hull v. Burr, 1914, 234 U.S. 712, 34 S.Ct. 892, 58 L.Ed. 1557; Lawrence v. Morgan's Louisiana & T. R. & S. S. Co., 1887, 121 U.S. 634, 7 S.Ct. 1013, 30 L.Ed. 1018; Haines v. Carpenter, 1876, 91 U.S. 254, 23 L.Ed. 345.

**19.** In Toucey Mr. Justice Frankfurter observed that for "one hundred and fifty years, Congress made few withdrawals from this sweeping prohibition" of federal injunctions. He cites, as exceptions: (1) bankruptcy proceedings, (2) removal of actions, (3) limitation of shipowners' liability, (4) interpleader, (5) the Frazier-Lemke Act, 11 U.S.C.A. § 203.

**20.** There were important judge-made exceptions: (1) *In rem* proceedings in which both a federal and state court seek to adjudicate rights to property already in the custody of the federal courts. Julian v. Central Trust Co., 193 U.S. 93, 24 S.Ct. 399, 48 L.Ed. 629; Riverdale Cotton Mills v. Alabama & Georgia Mfg. Co., 1905, 198 U.S. 188, 25

S.Ct. 629, 49 L.Ed. 1008. Even in Toucey the majority conceded that res cas were imbedded in Section 265 by judicial construction, (2) *Relitigation cases.* Supreme Tribe of Ben-Hur v. Cauble, 1911, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673; Looney v. Eastern Texas R. Co., 1918, 247 U.S. 214, 38 S.Ct. 460, 62 L.Ed. 1084. (3) *Fraudulent or void judgment cases.* Marshall v. Holmes, 1891, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870; Simon v. Southern Railway Co., 1915, 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492.

**21.** Federal courts have long adjusted to duplication of in personam proceedings in state courts. "The rule, therefore, has become generally established that where the action first brought is in personam and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded." Kline v. Burke Construction Co., 1922, 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226.

**22.** The case for federal injunctions to protect exclusive jurisdiction is strongly argued in Kochery, Conflict of Jurisdiction: 28 U.S.C.A. § 2283 and Exclusive Jurisdiction, 4 Buff.L.Rev. 269 (1955) Kochery's

tion 265 of the 1911 Code, and Section 2283 of the 1948 Code. The argument would be stronger if there were more certainty as to the area of exclusive federal authority.[23]

The Reviser's Notes to Section 2283 show that the bankruptcy exception of Section 265 "was omitted and the general exception substituted to cover all exceptions". It is true that the notes show also that Congress intended to overrule Toucey and restore the basic law as it was generally understood before Toucey,[24] and that this would contract the prohibition against injunctions, at least as to relitigation cases. On the other hand, the comprehensiveness of the language covering "all exceptions" would seem to preclude finding any express or implied exception for cases involving exclusive federal jurisdiction and certainly no inference can be drawn that the section is entirely inapplicable to a situation such as is presented in the instant case. This conclusion would seem to result a fortiori when there are no pre-Toucey

cases clearly establishing an exception for exclusive federal jurisdiction cases or holding that Section 265 is inapplicable in such cases. "No such exception had been established by judicial decision under Section 265."[25]

In Amalgamated Clothing Workers of America v. Richman Brothers, 1955, 348 U.S. 511, 75 S.Ct. 452, 754, 99 L.Ed. 600, the Supreme Court had before it the meaning and applicability of Section 2283. The court reaffirmed the hands-off policy of Toucey and prescribed rules for construing Section 2283 hardly less inflexible than the rules Toucey prescribed for Section 265. An employer had filed suit in a state court to enjoin peaceful picketing by a union. The union, to avoid delays incident to opposing a permanent injunction and to appealing through the state courts, brought suit in a federal district court to restrain the employer from pursuing state court action.[26] The Supreme Court assumed that the state court lacked jurisdiction over the union's picketing. The union argued

thesis is that situations of conflict between state and federal courts involving exclusive federal jurisdiction are not within the compass of Section 2283 at all, were not intended to be, and never were subject to the provisions of Section 2283. Federal decisions "have failed to grapple adequately with the proper role of a federal court when there is state court 'usurpation' of cases or controversies which Congress has provided shall be within the exclusive jurisdiction of the federal system". See also Comment, Power of a Federal Court to Enjoin State Court in Aid of Its Exclusive Jurisdiction, 48 N.W.L.Rev. 383 (1953); Comment, Federal Judicial Power, 4 Race Rel.Rep. 825, 828 (1959). Professor Moore does say: "Where a federal court has exclusive jurisdiction over the subject matter it may restrain state proceedings that interfere with that jurisdiction". Moore's Commentary on the Judicial Code § 0.03 (49), p. 412 (1949). But the case he cites, N.L.R.B. v. Sunshine Mining Co., 9 Cir., 1942, 125 F.2d 757, shows that he had in mind not a general area of the law which is exclusively within the federal sphere but particular lawsuits in which a federal court has issued an order jeopardized or interfered with by state court proceedings.

23. This argument is more effective in a situation where exclusive federal jurisdiction has been granted over a clearly defined area than it is in the still unsettled areas of labor law and of state-federal compensation to amphibious workers. "The minority position [in Richman] would in certain cases lead to the very breach of comity which Section 2283 was designed to prevent." Comment, The Supreme Court, 1954 Term, 69 Harv.L.Rev. 119, 182 (1955).

24. The Reviser's Notes, H.R.Rep. No. 308, 80th Cong. 1st Sess. A. 181 1947; U.S. Code Cong.Service, 80th Cong. 2nd Sess., p. 1910 (1948). See Moore's Commentary on the U.S.Judicial Code (1949), p. 410.

25. Mr. Justice Frankfurter in Amalgamated Clothing Workers of America v. Richman Brothers, 1955, 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600.

26. In Richman, as in the instant case, strong considerations argued for issuance of an injunction to stay state court proceedings. Long before the union could exhaust appellate procedures of the state and eventually perhaps get relief from the Supreme Court, the practical effect

that Section 2283 was not intended to apply when the subject matter is exclusively within the federal system; exclusive jurisdiction was vested with the National Labor Relations Board. The union argued also that if Section 2283 were applicable, the action would fall within the statutory exceptions. The Court rejected both contentions. Mr. Justice Frankfurter, for the majority, stated: "[In the enactment of Section 2283] Congress made clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation. * * * We cannot accept the argument * * * that § 2283 does not apply whenever the moving party in the District Court alleges that the state court is 'wholly without jurisdiction over the subject matter, having invaded a field pre-empted by Congress.' No such exception had been established by judicial decision under former § 265. In any event, Congress has left no justification for its recognition now. This is not a statute conveying a broad general policy for * * * ad hoc application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions."

This Court considered Section 2283 in Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp., 5 Cir., 1957, 244 F.2d 394, 396, Judge Tuttle, for the Court, pointed out that this was a "somewhat troubled * * * area in which the effect of several crucial and divided Supreme Court decisions and [the effect]

of the 1948 revision of the Judicial Code have as yet been insufficiently explored".[27] The Court approved the issuance of an injunction prohibiting a creditor from prosecuting a state court action to replevy certain property sold by the trustee in bankruptcy under an order of the federal court approving the sale to the highest bidder. The Court, rejecting an interpretation of the statute "in the abstract", found an implied exception for relitigation cases in the legislative intent to reverse Toucey. The Court then based its holding primarily on the pre-Toucey cases of Julian v. Central Trust Co., 1904, 193 U.S. 93, 24 S.Ct. 399, 48 L.Ed. 629 and Riverdale Cotton Mills v. Alabama & Georgia Mfg. Co., 1905, 198 U.S. 188, 25 S.Ct. 629, 49 L.Ed. 1008.

This Court again considered the meaning and applicability of Section 2283 in the recent case of Southern California Petroleum Corp. v. Harper, 5 Cir., 1960, 273 F.2d 715. In that case the plaintiffs filed suit in the federal court asking for an injunction restraining the defendants from proceeding with a suit in the state courts, on the ground that the defendants were relitigating issues decided between the same parties in earlier litigation in the federal court. We affirmed the district court's denial of the injunction. Conceding an implied exception to Section 2283 for relitigation cases,[28] under Jacksonville Blow Pipe, we observed:

"Section 2283 is essentially a rule of comity, and the demand here that

---

of the state court's order might well be to break the strike, resolving the controversy in the employer's favor, by an invalid proceeding.

27. Commenting on Section 2283, then before Congress, Professor Barrett stated: "Another solution might be merely to repeal Section 265 altogether and leave the whole problem to the courts to be solved on general principles of comity. Short of this, however, any amendment should properly solve more questions than it raises. The proposed revision does not appear to have this virtue". Barrett, Federal Injunctions Against Proceedings in State Courts, 35 Cal.L.Rev. 545, 563, (1947).

28. The Court had some doubt as to whether all of the issues decided in the earlier case were being relitigated. The court held, therefore: "We take the view that a complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings. If we err, all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res adjudicata and collateral estoppel." Southern California Petroleum Corp. v. Harper, 5 Cir., 1960, 273 F.2d 719.

a federal court interfere with state court proceedings is directed to the discretion of the federal court. This discretion should be exercised in the light of the historical reluctance of federal courts to interfere with state judicial proceedings. This Court has often demonstrated such reluctance. '[I]nterference with the orderly and comprehensive disposition of a state court litigation should be avoided', the Supreme Court admonishes us. Brillhart v. Excess Ins. Co., 1942, 316 U.S. 491, 62 S. Ct. 1173, 86 L.Ed. 1620, rehearing denied, 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed. 562." Southern California Petroleum Corporation v. Harper, 5 Cir., 1960, 273 F.2d 718.

In another recent case, Empire Pictures Distributing Co. v. City of Fort Worth et al., 5 Cir., 1960, 273 F.2d 529, 536, this Court relied in part on Section 2283, as interpreted in Richman, in applying the doctrine of judicial abstention to an action in which, on the ground of unconstitutionality, a motion picture distributing company sought to enjoin the city from enforcing a censorship ordinance. Judge Cameron, for the majority, stressing that the decision in Richman rests on a broad basis, quoted language from Richman appropriate in the instant case:

"The assumption upon which the argument proceeds is that federal rights will not be adequately protected in the state courts, and the 'gap' complained of is impatience with the appellate process if state courts go wrong. But during more than half of our history Congress, in establishing the jurisdiction of the lower federal courts, in the main relied on the adequacy of the state judicial systems to enforce federal rights, subject to review by this Court. With limited exceptions, it was not until 1875 that the lower federal courts were given general jurisdiction over federal questions. During that entire period, the vindication of federal rights depended upon the procedure which petitioner attacks as so grossly inadequate that it could not have been contemplated by Congress. The prohibition of § 2283 is but continuing evidence of confidence in the state courts reinforced by a desire to avoid direct conflicts between state and federal courts. * * *"

The same argument advanced in the instant case was advanced in H. J. Heinz v. Owens, 9 Cir., 1951, 189 F.2d 505, rehearing denied, 9 Cir., 191 F.2d 257, certiorari denied 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677, rehearing denied 342 U.S. 934, 72 S.Ct. 374, 96 L.Ed. 696. That case involved patent rights. The plaintiffs asked for an injunction restraining state court action, contending that the injunction was necessary "in aid of" the jurisdiction of the federal courts, under Section 2283. The argument was based upon a premise of exclusive jurisdiction in the federal court of the subject matter of the action. The Court affirmed denial of the injunction: "[T]his statute [Section 2283] and the policy underlying it afford a sound basis for a judicial conclusion that the granting of such declaratory relief would constitute an abuse of discretion. * * * We find no justification for prejudging the question or for assuming that the [state] tribunal will not respect any controlling limitations upon its power." [189 F.2d 509.] In an analogous situation before a district court, the court held: "[T]he phrase 'in aid of its jurisdiction' does not permit interference by a federal court even when it is alleged there is exclusive jurisdiction in the federal court." International Union of Operating Engineers, Locals No. 542, 542-A, 542-B v. William D. Baker Co., D.C.E.D. Pa.1951, 100 F.Supp. 773, 777.

We cast no doubts on the correctness of Jacksonville Blow Pipe. Relitigation of issues previously decided between the same litigants is a narrow exception to the general ban against injunctions. It may be supported as encompassed in the third express excep-

tion of Section 2283.[29] But, as we read Richman, Heinz v. Owens, Harper and Empire Pictures, the hands-off doctrine expressed in Section 2283 is to be considered in the light of the function of Section 2283 as a pillar of federalism. Like the doctrine of abstention, its "* * * justification * * * lies in regard for the respective competence of the state and federal court systems and for the maintenance of harmonious federal-state relations in a matter close to the political interests of a State". Louisiana Power & Light Co. v. City of Thibodaux, 1959, 360 U.S. 25, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058.

The phrase, "where necessary in aid of its jurisdiction", therefore, should be interpreted narrowly, in the direction of federal non-interference with orderly state proceedings. It is even questionable whether the phrase authorizes injunctions to protect jurisdiction of original actions; the Reviser's Notes indicate that the phrase was added "to make clear the recognized power of the Federal courts to stay proceedings in State cases removed to the district courts". In any event, it is not, as seems to be asserted here, a mandate to federal courts to hold the line against a possible state invasion of a theoretic concept of federal jurisdiction over a field of law supposedly the exclusive domain of federal courts. It is not to prevent a threatened trespass. Properly considered, Section 2283, as a whole, "does not go to the jurisdiction of a federal court, but is an affirmation of the rules of comity, and hence it should be read in conjunction with the judicial principles developed for our dual system of courts". Moore, Commentary on the Judicial Code, § .03(49), p. 407 (1949).

■■ If, as Louisiana courts believe, waterfront workers, even longshoremen, are entitled to the protection of state compensation laws, there is an orderly system of appeal and review within the state court system, leading up to the United States Supreme Court, that provides a proper method for determining the issue within the established framework of our federal government. We too err. Flowers and Noah are not the last word on the subject, only the latest word. The twilight zone cases are close enough, the Supreme Court is divided enough, and there is uncertainty enough as to the choice of controlling policies in federal-state conflicts over compensation for waterfront workers, to justify resolution of the issue through the state court route. That is the view of Louisiana courts. Right or wrong, this view is entitled to deference by federal courts.

In short, giving full weight to the purpose and function of Section 2283 as an important instrument for making federalism work, we find that there is no express or implied exception in Section 2283 permitting an injunction in this case. Further, we think that the broad language of Section 2283 and the policy underlying it are against issuance of a federal injunction to stay state court proceedings even when the subject matter of an action, as federal courts see it, rests exclusively in federal courts under a federal statute.

Judgment is

Affirmed.

---

29. Moore writes: "[I]t is well to note and dispose of the third exception to the effect that a federal court can enjoin state proceedings 'to protect or effectuate its judgments.' This overrules the holding of the Toucey case and adopts the theory of the 'relitigation' cases, which Toucey had rejected. In other words where a federal court has adjudicated a matter, this court can protect or effectuate its judgment, whether in personam or in rem, by enjoining, at the instance of the prevailing party, relitigation of the matter. The party prevailing in the federal court is not obliged to plead his federal judgment in the state court action and, if eventually unsuccessful, seek Supreme Court review of the adverse state judgment." Moore's Commentary on the U. S. Judicial Code, ¶0.03 (49), p. 410 (1949).